CALIFORNIA *v.* ROONEY

No. 85–1835.   Argued March 25, 1987—Decided June 23, 1987

*Arnold T. Guminski* argued the cause for petitioner. With him on the briefs were *Harry B. Sondheim* and *Ira Reiner*.

*Arthur Lewis* argued the cause for respondent. With him on the brief was *Roger S. Hanson.**

PER CURIAM.

We granted the State's petition for certiorari to decide whether respondent retained an expectation of privacy in a bag that he placed in the communal trash bin of a multi-unit apartment building. After briefing and oral argument on that issue, it has now become clear that the question is not properly presented in this case.

---

*Briefs of *amici curiae* urging reversal were filed for the State of California et al. by *John K. Van de Kamp,* Attorney General of California, *Steve White,* Chief Assistant Attorney General, *Thomas A. Brady,* Supervising Deputy Attorney General, *Laurence K. Sullivan,* Assistant Supervising Deputy Attorney General, and by the Attorneys General for their respective States as follows: *Charles A. Graddick* of Alabama, *Jim Smith* of Florida, *Neil F. Hartigan* of Illinois, *Linley E. Pearson* of Indiana, *David L. Armstrong* of Kentucky, *Edward Lloyd Pittman* of Mississippi, *Nicholas J. Spaeth* of North Dakota, *LeRoy S. Zimmerman* of Pennsylvania, *T. Travis Medlock* of South Carolina, *Mary Sue Terry* of Virginia, *Kenneth O. Eikenberry* of Washington, *Bronson La Follette* of Wisconsin, and *A. G. McClintock* of Wyoming; and for Americans for Effective Law Enforcement, Inc., et al. by *David Crump, Courtney A. Evans, Daniel B. Hales, Jack E. Yelverton, Fred E. Inbau, Wayne W. Schmidt,* and *James P. Manak.*

*John Hamilton Scott* filed a brief for the California Public Defender's Association as *amicus curiae* urging affirmance.

# I

Based upon an informant's tip that respondent was accepting wagers on professional football games at a specified telephone number, police began an investigation which eventually led to an application for a search warrant for 1120 North Flores Street, Apartment No. 8, West Hollywood, California. In conjunction with the application, a police officer submitted an affidavit including at least five details in support of the warrant: (1) that the informant had named Rooney and had correctly specified when Rooney would be at the apartment; (2) that the telephone number and utilities were listed to one Peter Ryan, and that use of a pseudonym is common among bookmakers; (3) that Rooney had previously been arrested for bookmaking at the apartment; (4) that through a search of the communal trash bin in the apartment building's basement the police had retrieved a bag containing mail addressed to Rooney at Apartment No. 8, and containing evidence of gambling activity; and (5) that the police had dialed the telephone number the informant had given them and had overheard a conversation involving point spreads on professional football games. See App. 19–28. The Magistrate found probable cause for a search of Apartment No. 8, and issued a warrant. Incriminating evidence was found during the search, and respondent was arrested.

After he was charged with a number of felony offenses, respondent brought a motion to quash the search warrant and to dismiss the felony charges against him. He argued that there was no probable cause to support the warrant because the earlier warrantless search of the communal trash bin had violated his Fourth Amendment rights under a number of California Supreme Court precedents, and that, without the incriminating evidence found in the trash, there was insufficient evidence to support the warrant. A Magistrate granted respondent's motion, agreeing that the evidence obtained from the trash bin could not be used to support the

search warrant for the apartment, and ruling that the other evidence offered in support of the search warrant was insufficient to establish probable cause. The Superior Court reached the same conclusion. Pursuant to California procedural rules, the State then informed the court that it could not prosecute the case without the evidence seized in the search of the apartment, and the case was dismissed, thus allowing the State to appeal the order quashing the warrant.

The Court of Appeal reversed on the only issue before it — to use the State's words, "the sufficiency of the affidavit in support of the search warrant."[1] 175 Cal. App. 3d 634, 221 Cal. Rptr. 49 (1985). Although it concluded that the evidence found in the trash bin could not be used to support the search warrant, the Court of Appeal examined the other evidence offered in support of the warrant under the standards set forth in *Illinois* v. *Gates*, 462 U. S. 213 (1983), and held that there was sufficient other evidence to establish probable cause in support of the warrant. The Superior Court's order dismissing the case was therefore reversed, allowing the prosecution to proceed. The California Supreme Court de-

---

[1] Opening Brief for Appellant in No. B006936, Cal. 2d App. Dist.

Throughout the proceedings it was clear that the courts were passing only upon Rooney's motion to quash the search warrant and suppress the evidence found in the apartment; there was no motion to suppress the evidence found in the trash. For example, the first thing the Magistrate said after calling Rooney's case was: "This is before the Court on the notice of motion to quash the search warrant pursuant to Penal Code Section 1538.5." Clerk's Transcript 2–3. After hearing argument involving the different parts of the affidavit supporting the search warrant, the Magistrate announced: "It is going to be the ruling of this Court that although this is a relatively close matter, but I feel that the notice of motion to quash the search warrant pursuant to Penal Code Section 1538.5 should be granted." *Id.*, at 21.

Again, when the case came before the Superior Court, the first thing the judge stated was: "The matter pending, motion to suppress evidence pursuant to Section 1538.5. At this point, to classify the issue, is directed at the sufficiency of the affidavit in support of the search warrant and challenges that affidavit on its face." App. 50.

nied both petitioner's and respondent's petitions for review. The State then sought review in this Court, arguing that the California courts had erred in stating that the search of the trash was unconstitutional. We granted certiorari. 479 U. S. 881 (1986).

## II

This Court "reviews judgments, not statements in opinions." *Black* v. *Cutter Laboratories*, 351 U. S. 292, 297 (1956); see also *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 842 (1984); *Williams* v. *Norris*, 12 Wheat. 117, 120 (1827). Here, the judgment of the Court of Appeal was entirely in the State's favor—the search warrant which was the sole focus of the litigation was deemed valid. The fact that the Court of Appeal reached its decision through analysis different than this Court might have used does not make it appropriate for this Court to rewrite the California court's decision, or for the prevailing party to request us to review it. That the Court of Appeal even addressed the trash bin issue is mere fortuity; it could as easily have held that since there was sufficient evidence to support the search even without the trash evidence, it would not discuss the constitutionality of the trash search. The Court of Appeal's use of analysis that may have been adverse to the State's long-term interests does not allow the State to claim status as a losing party for purposes of this Court's review.[2]

---

[2] A careful and adequate reading of the record, cf. *post*, at 318 (WHITE, J., dissenting), reveals that the State itself has never believed that the Court of Appeal's judgment incorporated any motion to suppress the evidence found in the trash. For example, as JUSTICE WHITE notes, the State sought rehearing in the Court of Appeal, but as part of that petition it stated that the Court of Appeal's "opinion should be appropriately modified to delete its discussion of the issue since its determination that the search warrant was based upon probable cause was made notwithstanding its conclusion that the *Krivda* rule [*People* v. *Krivda*, 5 Cal. 3d 357, 486 P. 2d 1262 (1971)] applies to communal trash bins." Petition for Rehearing or Modification of Opinion in No. B006936 (Cal. 2d App. Dist.), p. 4. If the

But, the State argues, *if* the case does come to trial, and *if* the State does wish to introduce the evidence, it will be barred from doing so because the reasoning in the Court of Appeal's decision will constitute the law of the case. There

---

Court of Appeal had actually issued a judgment on the issue, the State would have sought a modification of the *judgment*—not a mere modification of the *opinion*. That the State does not believe that the Court of Appeal issued a judgment excluding the evidence from the trash search is further corroborated by the State's own arguments before this Court. In its petition for certiorari, the State explained:

"At first blush, it might be urged that a petition for writ of certiorari should not be granted because the Court of Appeal's conclusion that the search of the apartment building communal trash bin was unreasonable constitutes *obiter dicta*. However, the Court of Appeal's determination that the search of the trash bin was unreasonable cannot be deemed to merely constitute *obiter dicta*. . . . *Unless overturned on this point, the Court of Appeal's conclusion constitutes the law of the case.* . . . Hence at the trial, the People *would be* precluded from introducing evidence as to what the police officers had found in the trash bin." Pet. for Cert. 14–15 (emphasis added, citations omitted).

Similarly, the Deputy District Attorney arguing the case before this Court candidly described the State's reasons for seeking certiorari in this case:

"Q. So that everything you found under the search warrant is admissible.

"Mr. Guminski: That is correct, Your Honor. But the ruling . . . is a ruling that forecloses the use of what was discovered as far as the trash bag; that would be the rule of the case.

"Q. And you think you're really going to use that at this trial, or you think that you would really need to?

"A. Well, Your Honor, I think what we really want would be to . . . overrule *People* v. *Krivda*, which was here before this Court in 1972, and which was remanded then because there were independent state grounds.

"I mean, I wish to answer candidly to your question, Justice; there is an intention to use it, of course.

"But it is a vehicle of review." Tr. of Oral Arg. 26–27.

Of course, as we explain, see text this page and *infra,* at 313–314, the law-of-the-case doctrine provides no justification for our granting review at this stage. See *Barclay* v. *Florida,* 463 U. S. 939, 946 (1983); *Hathorn* v. *Lovorn,* 457 U. S. 255, 261–262 (1982); see generally R. Stern, E. Gressman, & S. Shapiro, Supreme Court Practice 132 (6th ed. 1986).

are two too many "ifs" in that proposition to make our review appropriate at this stage. Even if everything the prosecution fears comes to bear, the State will still have the opportunity to appeal such an order,[3] and this Court will have the chance to review it, with the knowledge that we are reviewing a state-court *judgment* on the issue, and that the State Supreme Court has passed upon or declined review in a case squarely presenting the issue. As it stands, we have no way of knowing what the California Supreme Court's position on the issue of trash searches currently is.[4] It is no answer to

---

[3] Assuming that respondent's motion to suppress the trash evidence will be granted, the prosecution will then have to decide whether it can prosecute without the evidence. If it cannot, then an order of dismissal will be entered, and the prosecution may immediately appeal. See Cal. Penal Code Ann. §§ 1238, 1538.5 (West 1982). Even if the prosecution can proceed without the evidence, however, it may still obtain immediate review through a writ of mandate or prohibition. § 1538.5(o). A writ of mandate could compel the Superior Court to admit the evidence and "must be issued where there is not a plain, speedy, and adequate remedy, in the ordinary course of law." Cal. Civ. Proc. Code Ann. § 1086 (West 1982). See generally B. Witkin, California Criminal Procedure §§ 869, 870 (1985 Supp., pt. 2).

[4] The California rule regarding trash searches is derived from the California Supreme Court's decision in *People* v. *Krivda*, 5 Cal. 3d 357, 486 P. 2d 1262 (1971) (en banc). We granted certiorari to review that decision but we were unable to determine whether the California Supreme Court had rested its decision on state or federal grounds. 409 U. S. 33 (1972). On remand, the court announced that it had rested on both state and federal constitutional grounds, 8 Cal. 3d 623, 504 P. 2d 457, cert. denied, 412 U. S. 919 (1973), which prevented us from reviewing the case. In 1985, however, the people of California amended their Constitution to bar the suppression of evidence seized in violation of the California, but not the Federal, Constitution. Cal. Const., Art. I, § 28(d); see generally *In re Lance W.*, 37 Cal. 3d 873, 694 P. 2d 744 (1985). Thus, the Court of Appeal was forced to rest its discussion of the trash-search issue in this case on the Federal Constitution.

While we express no view on the merits of the issue, we note that the arguments that the State now makes rely, in large part, on post-*Krivda* developments, including the state constitutional amendment discussed above, this Court's intervening decisions, and decisions of the United

say that the California Supreme Court already had its chance to review the matter and declined to do so when it denied the State's petition for review in this case. The denial of review may well have been based on that court's recognizing, as we now do, that the prosecution won below, and was therefore not in a position to appeal. Giving the California Supreme Court an opportunity to consider the issue in a case that properly raises it is a compelling reason for us to dismiss this petition.[5] Under these circumstances, our review of the trash-search issue, which has never been the subject of an actual judgment, would be most premature.

The writ of certiorari is dismissed as improvidently granted.

JUSTICE MARSHALL concurs in the judgment.

JUSTICE WHITE, with whom THE CHIEF JUSTICE and JUSTICE POWELL join, dissenting.

The police obtained information that respondent, using a specified telephone number, was accepting wagers on professional football games. It was learned from the telephone company that the telephone number was listed to one Peter Ryan at 1120 North Flores Street, Apartment No. 8, West Hollywood, California. Two officers went to 1120 North Flores Street, a 28-unit apartment building with a subterranean garage which was accessible to the public, entered the garage, and searched the communal trash bin. In the bottom half of the bin they discovered a brown paper shopping bag which contained mail addressed to respondent at 1120

___

States Courts of Appeals dealing with trash searches. The California Supreme Court should be afforded the opportunity to consider these factors before we intervene.

[5] Moreover, because of the unusual posture of the case, we cannot know whether the prosecution will even seek to introduce the trash evidence at trial. If the evidence found in the apartment pursuant to the valid warrant is strong enough, the prosecution might not even be interested in presenting the more attenuated evidence found in the trash.

North Flores Street, Apartment No. 8, and papers bearing bookmaking notations. The police seized the bag. They used these items and the results of further investigation to support a search warrant of respondent's apartment, which was duly executed.

Rooney was charged with bookmaking and associated crimes. He moved to have the warrant quashed and the evidence obtained from the search of the trash bin excluded. The trial court granted his motion, the State declared that it could not proceed, and the case was dismissed. The State's appeal followed. The California Court of Appeal held that the State had failed to prove that Rooney had abandoned his property by putting it into the trash bin. Because the garage was accessible to the public, however, and the officers did not commit a trespass by entering the garage, the court also rejected Rooney's claim that the search of the bin was illegal because it occurred within the curtilage of his apartment. In so ruling, the Court of Appeal relied on a holding of the California Supreme Court to this effect. *People* v. *Terry*, 61 Cal. 2d 137, 152, 390 P. 2d 381, 391 (1964). The court went on to hold that under the decisions of the Supreme Court of California, the Fourth Amendment did not require a warrant for a trash-bin search but did require probable cause, which the court found lacking here.[1] The search of the trash bin therefore violated the Fourth Amendment and the evidence seized from the bin was not admissible. The

---

[1] The court observed that the "Truth in Evidence" provision of the Victim's Bill of Rights (Proposition 8) abrogated a defendant's right to object to and to suppress evidence seized in violation of the California but not of the Federal Constitution. 175 Cal. App. 3d 634, 644, 221 Cal. Rptr. 49, 55 (1985). The Court of Appeal noted, however, that the California Supreme Court had held that under both the California and Federal Constitutions, a trash can outside the curtilage of a house could be searched without a warrant, but not without probable cause. *People* v. *Krivda*, 5 Cal. 3d 357, 486 P. 2d 1262 (1971), vacated and remanded, 409 U. S. 33 (1972), on remand, 8 Cal. 3d 623, 504 P. 2d 457, cert. denied, 412 U. S. 919 (1973).

subsequent warrant, however, was itself valid, since it was supported by probable cause wholly aside from the trash-bin evidence. It is the former holding that the State challenged in its petition for certiorari after the California Supreme Court denied review. I would reverse.

## I

We granted certiorari to consider whether the search of the communal trash bin violated the Fourth Amendment. The Court now holds that the issue is not properly before us and dismisses the writ. Because this judgment is plainly infirm, I dissent.

Rooney first moved to quash the search warrant in the Municipal Court on the ground that the evidence taken from the trash bin had been illegally seized and could not be used to furnish probable cause for the warrant. The Magistrate agreed that the trash-bin search was illegal and that aside from the items taken from the bin, the search warrant affidavit failed to reveal probable cause for the issuance of the warrant. The case was dismissed when the State indicated it could not proceed.

The State, claiming that the ruling had been erroneous, moved in the Superior Court to reinstate the charges. The motion was granted and a trial date was set. Rooney then filed a motion "to suppress as evidence all tangible or intangible things seized, including but not limited to observations and conversations." App. 40–41. There were two grounds for the motion: first, that the State had obtained the address of the apartment without a warrant and that this alleged violation tainted the fruits of all subsequent investigations; second, that the search of the trash bin was illegal. Id., at 43–45. Most of the hearing on the motion centered on the search of the trash bin, the court concluding that the items seized from the bin could not be used to furnish probable cause for the warrant. Id., at 69–70. The case was again

dismissed on the State's representation that it could not proceed.

The record to this point plainly reveals that the motion to suppress filed in the Superior Court literally covered the items seized from the trash bin. Moreover, quashing the warrant was based on the ruling that the search of the bin was illegal and that the items seized could not be used to support the warrant. It makes no sense to characterize this ruling as anything but a suppression of the items seized: they could not be used as evidence to support the warrant and obviously could not be used as evidence at trial.

The State appealed, arguing that the ruling on the trash bin was erroneous and that the warrant was valid. The Court now suggests that the Court of Appeal had before it only the admissibility at trial of the evidence seized from the apartment pursuant to the warrant. But the warrant could have been sustained either because the trash-bin search was legal and the items seized from the bin therefore admissible or because the other evidence was itself sufficient. The Court of Appeal expressly said that both issues were before it:

> "The People bring this appeal (Pen. Code, § 1238, subd. (a)(7)) from the *order dismissing the case against defendant* who was charged with bookmaking (§ 337a). The dismissal was entered after the prosecution represented that it could not proceed due to the granting of defendant's motion to quash a search warrant *and suppress evidence* (§ 1538.5). *The first issue before us is whether the warrantless search of the defendant's apartment building's trash bin constituted an unreasonable search and seizure.* We conclude that it did for lack of probable cause. The second issue is whether a police officer's affidavit provided probable cause for the issuance of the search warrant authorizing the search of defendant's apartment. We conclude that even excluding the items seized from the trash bin, the tip from the informant

coupled with other corroborating evidence were sufficient to support the warrant. We therefore reverse and remand." 175 Cal. App. 3d 634, 638–639, 221 Cal. Rptr. 49, 51 (1985) (emphasis added).

The State argued only the legality of the search of the bin, and the Court of Appeal addressed that issue first, devoting most of its opinion to the question, which it surely would not have done if the issue were irrelevant to its disposition of the case. Had the Court of Appeal upheld the trash-bin search, it would have reversed the Superior Court. The Court of Appeal dealt with the adequacy of the other evidence only after holding that the items seized from the bin could not be used as evidence to support the warrant. That ruling effectively made that evidence unavailable to the State.

Both parties filed petitions for rehearing, Rooney arguing that the issue of the adequacy of the evidence aside from the items seized from the bin was not properly before the court and that the issue had been improperly decided. The State reargued the legality of the search of the bin but also asked in any event that the court strike the portion of its opinion dealing with the items seized from the trash, since that ruling foreclosed using that evidence at trial. Both petitions were denied.

Both sides then filed petitions for review in the California Supreme Court, the State arguing that it had erroneously been denied the use at trial of the evidence found in the trash bin. Both petitions for review were denied. The State then sought a stay of the Court of Appeal's judgment pending certiorari here. Its argument was that it was entitled to the stay in order to permit it to seek review of the judgment that the trash-bin items were not admissible at trial. The Court of Appeal granted the stay and we in turn granted certiorari.

There is no jurisdictional obstacle to deciding the issue on which we granted certiorari. The highest court of the State in which review could be had decided that question against

the State, clearly holding that the trash-bin evidence must be suppressed. It then stayed the effect of that ruling. We granted certiorari, the case was briefed and orally argued, and Rooney never suggested that the issue of the trash-bin search is not properly before us. We have repeatedly held pretrial orders suppressing evidence to be final judgments within the meaning of 28 U. S. C. § 1257(3). See *New York* v. *Quarles*, 467 U. S. 649, 651, n. 1 (1984); *California* v. *Stewart*, decided with *Miranda* v. *Arizona*, 384 U. S. 436, 498, n. 71 (1966); see also *Michigan* v. *Clifford*, 464 U. S. 287 (1984); *Michigan* v. *Tyler*, 436 U. S. 499 (1978); *Colorado* v. *Bannister*, 449 U. S. 1 (1980).

The Court now dismisses the case, but I suggest that its action is based on a careless and inadequate reading of the record and that it should have more regard for the time and effort that will be wasted by its belated order. Because in my view the legality of the search of the communal trash can is properly here, I shall address it.

## II

I note at the outset that I have no reason to differ with the state court that the trash bin was not within the curtilage of Rooney's apartment, that the garage was open to the public, and that the officers committed no trespass and were not invading any private zone when they approached the trash bin. The question is whether the search of the trash bin and the seizure of some of its contents were unreasonable within the meaning of the Fourth Amendment, which protects the right of the people to be secure "in their persons, houses, papers, and effects, against unreasonable searches and seizures."

The State submits that once Rooney placed the seized items in the trash bin, he abandoned them and lost any possessory or ownership interest in them that he may have had. Hence, they were no longer *his* papers or effects and were

not protected by the Fourth Amendment.[2]    The Court of
Appeal rejected this submission and for present purposes, I
assume that under state law Rooney retained an ownership
or possessory interest in the trash bag and its contents.
Rooney's property interest, however, does not settle the
matter for Fourth Amendment purposes, for the reach of the
Fourth Amendment is not determined by state property law.
As we have said, the premise that property interests control
the right of officials to search and seize has been discredited.
*Oliver* v. *United States*, 466 U. S. 170, 183 (1984); *Katz* v.
*United States*, 389 U. S. 347, 353 (1967); *Warden* v. *Hayden*,
387 U. S. 294, 304 (1967).    The primary object of the Fourth
Amendment is to protect privacy, not property, and the ques-
tion in this case, as the Court of Appeal recognized, is not
whether Rooney had abandoned his interest in the property-
law sense, but whether he retained a subjective expectation
of privacy in his trash bag that society accepts as objectively
reasonable.    *O'Connor* v. *Ortega*, 480 U. S. 709, 715 (1987);
*California* v. *Ciraolo*, 476 U. S. 207, 211, 212 (1986); *Oliver*
v. *United States*, *supra*, at 177; *Smith* v. *Maryland*, 442
U. S. 735, 740 (1979); *Katz* v. *United States*, *supra*, at 361
(Harlan, J., concurring).    I therefore proceed to that
inquiry.

I acknowledge at the outset that trash can reveal a great
deal about the life of its disposer.[3]    As respondent elo-

---

[2] The State emphasizes that the Fourth Amendment protects the "right
of the people to be secure in *their* persons, houses, papers, and effects."
Brief for Petitioner 2.    It points to *Oliver* v. *United States*, 466 U. S. 170,
176–177 (1984), as an illustration of the plain language approach to the
Fourth Amendment.    In *Oliver*, we based our holding that the Fourth
Amendment does not extend to an open field on the explicit language of the
Amendment.    We held that an open field is neither a "house" nor an "ef-
fect."    See also *id.*, at 184 (WHITE, J., concurring).

[3] The Garbage Project of the University of Arizona, directed by ar-
chaeologists at the university, was founded upon the advice of archaeology
pioneer Emil Haury: "If you want to know what is really going on in a com-
munity, look at its garbage."    W. Rathje, Archaeological Ethnography

quently phrases it, the domestic garbage can contains numerous "tell-tale items on the road map of life in the previous week." Brief for Respondent 15. A *hope* of privacy is not equivalent to an *expectation* of privacy, however. Respondent vigorously argues that he exhibited an expectation of privacy by taking the affirmative step of placing his bag of trash in the bottom half of the dumpster. Tr. of Oral Arg. 37–38, 43–44, 55–56. This argument is somewhat difficult to accept. Nothing in the record demonstrates that respondent actually buried his trash in the bin as opposed to simply throwing it in when the bin was nearly empty. In any event, assuming that respondent did have a subjective expectation of privacy, "steps taken to protect privacy [do not] establish that expectations of privacy . . . are legitimate." *Oliver* v. *United States*, 466 U. S., at 182. "Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." *Id.*, at 182–183. A person may well intend not to relinquish all rights in personal property but nevertheless take action rendering this intent ineffective for Fourth Amendment purposes.

The State points out that the communal trash bin in which respondent placed his refuse was accessible to other tenants in the apartment building and their guests, to the owner and manager of the building, and to the public at large. It is common knowledge that trash bins and cans are commonly visited by animals, children, and scavengers looking for valuable items, such as recyclable cans and bottles, and serviceable clothing and household furnishings. Accordingly, Cali-

---

. . . Because Sometimes It is Better to Give than to Receive, in Explorations in Ethnoarchaeology 49, 54 (R. Gould ed. 1978). In that project, Tucson Sanitation Division personnel randomly selected refuse set out for collection by households throughout the city. Procedures ensured anonymity. The archaeologists sorted the refuse from each household into more than 150 categories in order to improve their understanding of contemporary society (as well as to refine techniques for understanding the material culture of earlier societies).

fornia argues, any expectation of privacy respondent may have had in the contents of the trash bin was unreasonable.

Respondent argues in response that the probability that garbage collectors or the police will search the contents of a particular trash bin is extremely small, and that this minute probability, in and of itself, makes his expectation of privacy in the trash bin reasonable. According to respondent, the reality of domestic garbage collection is that the collectors move quickly from bin to bin, do not have time to look for valuable items, and probably would not recognize evidence of criminal activity. Garbage is promptly intermingled with other garbage in a truck such that its origin can no longer be identified. It is then "hauled to the dump, where it will be burned/destroyed/plowed under by Caterpillar tractors, to form the foundation for new housing developments." Brief for Respondent 16. Similarly, respondent asserts that there clearly are too few policemen in Los Angeles to conduct random searches of trash cans for evidence of crime. Respondent further argues that one may have a "differential expectation of privacy" with respect to animals, children, and scavengers and with respect to the police. *Id.*, at 18; see *Smith* v. *Alaska*, 510 P. 2d 793, 803 (Alaska 1973) (Rabinowitz, C. J., dissenting). While it may not be totally unforeseeable that trash collectors or other third persons may occasionally rummage through one's trash, it may be quite unexpected that the police will conduct a systematic inspection for evidence of criminal activity. In any event, respondent states that the Fourth Amendment protects against the acts of the government, not private citizens.

I am unpersuaded. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz* v. *United States, supra*, at 351–352 (citations omitted). Respondent knowingly exposed his betting papers to the public by

depositing them in a trash bin which was accessible to the public. Once they were in the bin, he no longer exercised control over them. While he may not have welcomed intrusions, respondent did nothing to ensure that his refuse would not be discovered and appropriated. Indeed, he placed his papers in the bin for the express purpose of conveying them to third parties, the trash collectors, whom he had no reasonable expectation would not cooperate with the police. In *Smith* v. *Maryland*, 442 U. S. 735 (1979), we held that the installation, at the request of the police, of a pen register at the telephone company's offices to record the telephone numbers dialed on the petitioner's telephone did not violate the Fourth Amendment. The petitioner had no legitimate expectation of privacy in the telephone numbers since he voluntarily conveyed them to the telephone company when he used his telephone. "This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.*, at 743–744.

Respondent's reliance on the fact that the police do not ordinarily engage in random searches, or comprehensive city-wide searches, of trash cans is misplaced. A police department, like any organization with limited resources, allocates its resources to activities most likely to result in the detection or prevention of crime. The police in this case searched the trash bin after receiving a tip from an informant that a bookmaking operation was being conducted at the apartment house. It is not unforeseeable that police will investigate when they have information suggesting that an investigation will be useful. In *Smith* v. *Maryland*, for example, a Baltimore woman was robbed and thereafter received threatening and obscene phone calls from a man identifying himself as the robber. When their investigation led the police to suspect that the petitioner was the perpetrator, they had the pen register installed and recorded a call from the petitioner's home to the victim. The petitioner would have been entirely

justified in believing that the police would not likely have discovered his telephone call to the victim by means of a random search of telephone numbers dialed in the city, and that the police would not likely have undertaken a systematic search of all telephone calls made in the city. That fact, however, did not give petitioner a legitimate expectation of privacy in the telephone numbers he dialed. In *California* v. *Ciraolo*, 476 U. S., at 214, n. 2, we expressly rejected the California Court of Appeal's position that a search, which it would have found permissible if conducted pursuant to a routine police patrol, violated the Fourth Amendment because information of illegality had led the police to focus on a particular place. We held in that case that the observation of a fenced backyard by police officers trained in marijuana identification from a private plane at an altitude of 1,000 feet did not violate the Fourth Amendment because the defendant had no legitimate expectation that his property would not be so observed:

> "The observations of Officers Shutz and Rodriguez in this case took place within public navigable airspace . . . in a physically nonintrusive manner; from this point they were able to observe plants readily discernible to the naked eye as marijuana. That the observation from the aircraft was directed at identifying the plants and the officers were trained to recognize marijuana is irrelevant. Such observation is precisely what a judicial officer needs to provide a basis for a warrant. Any member of the public flying in this airspace who glanced down could have seen everything that these officers observed. On this record, we readily conclude that respondent's expectation that his garden was protected from such observation is unreasonable and is not an expectation that society is prepared to honor." *Id.*, at 213–214.

Any distinction between the examination of trash by trash collectors and scavengers on the one hand and the police on the other is untenable. If property is exposed to the general public, it is exposed in equal measure to the police. It is

clear from *Ciraolo* that the Fourth Amendment does not require the police to avert their eyes from evidence of criminal activity that any member of the public could have observed, even if a casual observer would not likely have realized that the object indicated criminal activity or would not likely have notified the police even if he or she had realized the object's significance. It may of course be true that a person minds an examination by the police more than an examination by an animal, a child, a neighbor, a scavenger, or a trash collector, but that does not render the intrusion by the police illegitimate.

The Court of Appeal noted the existence of municipal ordinances which prohibit persons other than authorized collectors from rummaging through the trash of another. Such ordinances, however, do not change the fact that the owner of the trash completely relinquishes control over the trash to a third party, the designated trash collector, who, for all the owner knows, will cooperate with the police. Cf. *Lewis* v. *United States*, 385 U. S. 206 (1966); *Hoffa* v. *United States*, 385 U. S. 293 (1966). Moreover, it is not at all clear that such a municipal ordinance would evoke an expectation of privacy in trash. Respondent did not rely on any such ordinance here, and it has been noted that the purpose of such ordinances is sanitation and economic protection of the authorized trash collector rather than privacy. See *United States* v. *Vahalik*, 606 F. 2d 99, 100–101 (CA5 1979), cert. denied, 444 U. S. 1081 (1980); *People* v. *Krivda*, 5 Cal. 3d 357, 368, n. 1, 486 P. 2d 1262, 1264, n. 1 (1971) (Wright, C. J., concurring and dissenting), vacated and remanded, 409 U. S. 33 (1972), on remand, 8 Cal. 3d 623, 504 P. 2d 457, cert. denied, 412 U. S. 919 (1973).

Every Federal Court of Appeals that has addressed the issue has concluded that the Fourth Amendment does not protect trash placed for collection outside a residence and its curtilage. *United States* v. *Dela Espriella*, 781 F. 2d 1432, 1437 (CA9 1986); *United States* v. *O'Bryant*, 775 F. 2d 1528

(CA11 1985); *United States* v. *Michaels*, 726 F. 2d 1307, 1312–1313 (CA8), cert. denied, 469 U. S. 820 (1984); *United States* v. *Kramer*, 711 F. 2d 789 (CA7), cert. denied, 464 U. S. 962 (1983); *United States* v. *Terry*, 702 F. 2d 299, 308–309 (CA2), cert. denied *sub nom. Williams* v. *United States*, 461 U. S. 931 (1983); *United States* v. *Reicherter*, 647 F. 2d 397, 399 (CA3 1981); *United States* v. *Vahalik, supra; United States* v. *Crowell*, 586 F. 2d 1020, 1025 (CA4 1978), cert. denied, 440 U. S. 959 (1979); *Magda* v. *Benson*, 536 F. 2d 111, 112–113 (CA6 1976); *United States* v. *Mustone*, 469 F. 2d 970, 972 (CA1 1972). The Courts of Appeals had little difficulty reaching this conclusion. As the Third Circuit stated in *United States* v. *Reicherter:*

> "Defendant claims that . . . he had a reasonable expectation of privacy in the trash he placed in a public area to be picked up by trash collectors . . . . A mere recitation of the contention carries with it its own refutation.
>
> .　　　.　　　.　　　.　　　.
>
> ". . . Having placed the trash in an area particularly suited for public inspection and, in a manner of speaking, public consumption, for the express purpose of having strangers take it, it is inconceivable that the defendant intended to retain a privacy interest in the discarded objects. If he had such an expectation, it was not reasonable." 647 F. 2d, at 399.

This unanimity of opinion among the federal appellate courts supports the determination that society is not prepared to accept as reasonable an expectation of privacy in trash deposited in an area accessible to the public pending collection by a municipal authority or its authorized agent.