**UNITED STATES of America, Plaintiff–Appellee,**

v.

**ACCRA PAC, INC., Defendant–Appellant.**

No. 98–3331.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1999.

Decided April 16, 1999.

Andrew B. Baker, Jr., Office of the United States Attorney, Dyer, IN, Sherry Estes, Environmental Protection Agency, Region 5, Office of Regional Counsel, Chicago, IL, Todd Kim (argued), Department of Justice, Land & Natural Resources Division, Washington, DC, for Plaintiff–Appellee.

Richard S. VanRheenen (argued), VanRheenen & Associates, Indianapolis, IN, for Defendant–Appellant.

Before POSNER, Chief Judge, and FLAUM and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Accra Pac abandoned an aerosol-can facility following an explosion and fire. The United States filed suit demanding that Accra Pac remove hazardous wastes from the site. The parties settled; Accra Pac did not concede liability but promised to cleanse the site under a plan agreeable to the Environmental Protection Agency. In 1997 the EPA ratified Accra Pac's proposal. Dissatisfied with mere *approval*, Accra Pac asked the district judge who is supervising compliance with the consent decree to take a blue pencil to the EPA's decision. Stripped of its details, Accra Pac's objection is that the EPA used the occasion to trumpet that it had been right all along, and that Accra Pac's data (and proposed cleanup plan) confirmed the need for action. Accra Pac asked the judge to require the EPA to be more neutral, reflecting the fact that the case was settled without an adjudication of liability. But the judge decided that the EPA's characterizations have some factual support and refused to require any change.

Before oral argument, we called for supplemental memoranda to address two issues that the parties' briefs slighted: whether there is appellate jurisdiction and, if so, whether the district court itself had

jurisdiction. Appellate jurisdiction is problematic because its only potential source is 28 U.S.C. § 1291, which authorizes appeal from a "final decision." One of many orders interpreting or implementing a consent decree cannot readily be called "final", and we have held accordingly that housekeeping orders in long-running cases are not appealable. E.g., *Bogard v. Wright*, 159 F.3d 1060 (7th Cir.1998); *Association of Community Organizations for Reform Now v. Illinois State Board of Elections*, 75 F.3d 304 (7th Cir.1996). But regulatory proceedings under consent decrees, like bankruptcies and post-judgment collection proceedings in regular civil cases, can encompass many other disputes that otherwise would be independent pieces of litigation. When that occurs, we ask whether a particular order would be appealable if it had been entered in a stand-alone case. *RTC v. Ruggiero*, 994 F.2d 1221 (7th Cir.1993); *King v. Ionization International, Inc.*, 825 F.2d 1180 (7th Cir.1987); *In re Morse Electric Co.*, 805 F.2d 262 (7th Cir.1986). The current dispute between Accra Pac and the EPA could have been a stand-alone suit under the Administrative Procedure Act, seeking review of the EPA's order approving the cleanup plan; the ruling now on appeal would have been the terminal order in such a suit. So it is appealable—but this theory of appellate jurisdiction has other implications, for a stand-alone suit would not have come within the district court's jurisdiction.

 Suppose Accra Pac had filed suit under the APA seeking review of the EPA's order. The district court would have dismissed that suit without reaching the merits, because Accra Pac could not have established the first requirement: that it be "adversely affected or aggrieved" by the administrative decision. 5 U.S.C. § 702. Unwelcome language in a substantively favorable decision is not the kind of adverse effect that meets the requirement of actual injury. *CH2M Hill Central, Inc. v. Herman*, 131 F.3d 1244 (7th Cir.1997); *Chica-*

*go Board of Trade v. SEC*, 883 F.2d 525 (7th Cir.1989). Likewise a litigant may not appeal from unfavorable statements in a judicial opinion, if the judgment was favorable. *California v. Rooney*, 483 U.S. 307, 311–14, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987); *Grinnell Mutual Reinsurance Co. v. Reinke*, 43 F.3d 1152 (7th Cir.1995); *Abbs v. Sullivan*, 963 F.2d 918 (7th Cir. 1992); *Bolte v. Home Insurance Co.*, 744 F.2d 572 (7th Cir.1984). A court of appeals reviews judgments, not opinions. Someone who seeks an alteration in the language of the opinion but not the judgment may not appeal; likewise if the document is an administrative decision rather than a judicial one.

Reluctance to review language divorced from results has a sound footing in the statutory requirement of an adverse effect—not to mention the constitutional requirement of a "case or controversy"—and has practical support too. Few victors in litigation or the administrative process are thrilled with the opinion; almost everyone perceives that different language could have produced benefits—perhaps ammunition for some future dispute (a particular concern of institutional litigants and those involved in long-running disputes), perhaps psychic gratification. It is work enough to resolve claims made by losers; review of claims made by *winners* could double the caseload, and to what end? Judicial time devoted to what may be a litigant's will-o'-the-wisp is time unavailable to resolve other, more concrete, disputes. No wonder appellate courts do not issue Writs of Erasure to change language in district judges' opinions, when the judgments are uncontested. When the speaker is part of the Executive Branch, there is even less justification for altering the language used to explain a decision. The President and his aides are entitled to express their views in their own words, without supervision by the Judicial Branch. Not even Accra Pac would dream of asking the district court to edit the brief filed by the Department of Justice in this case. It is no more sup-

portable for a judge to edit the EPA's memorandum explaining its decision to approve Accra Pac's cleanup proposal. Although it is possible to imagine situations in which language alone would meet the adverse effect requirement, a litigant's allegations do not cross that threshold even if they portend long and costly wrangling. *FTC v. Standard Oil Co.*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).

An unreviewable accusation that a tract of land is polluted by toxic wastes could cause injury by diminishing the land's market value. Cf. *Mead Corp. v. Browner*, 100 F.3d 152 (D.C.Cir.1996), concluding that, because a decision to place a tract on the National Priorities List does not extend any administrative opportunity for adjudication but immediately diminishes the land's value, it is reviewable as a "final" and "adverse" decision. Similarly being put on a blacklist, or being formally censured for misconduct, is treated as immediately redressible harm because it diminishes (or eliminates) the opportunity to practice one's profession even if the list or the censure does not impose legal obligations. See *Joint Anti–Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951). But Accra Pac does not complain about this kind of injury. It has not been put out of business, and though its land is not now saleable, this is not attributable to the 1997 memorandum. Accra Pac's injury comes from the tests that found pollutants and the complaint that kicked off this suit in 1989. The land will become marketable again once it has been cleansed. Recall the bottom line of the EPA's decision: if Accra Pac completes the work it has proposed, then the property will be in compliance with federal law. *That* conclusion increases the land's market value; what the EPA thinks about its current condition, and about Accra Pac's conduct before the fire, may get the goat of Accra Pac's principals, but it has nothing to do with any concrete injury at the hands of the EPA and therefore does not support federal jurisdiction.

■ Surprisingly, however, the United States believes that normal rules of justiciability do not apply to applications under consent decrees. Its supplemental memorandum states that a court's authority to superintend the implementation of a consent decree dissolves all obstacles to judicial review. The judge himself was of this view, writing: "There is no requirement that Accra Pac articulate a new injury to have standing; it is sufficient for jurisdictional purposes to identify a dispute related to the consent decree." That can't be right. Suppose the consent decree had a clause dispensing with the need for an Article III case or controversy and appointing the district judge ombudsman for all quarrels related to Accra Pac's site. That clause would be ineffectual: district judges can't suspend the application of Article III or grant themselves the power to issue advisory opinions one case at a time, and litigants can't stipulate to the enlargement of federal jurisdiction. A case or controversy must be present at every moment of the litigation. That's the point of the mootness doctrine, which is as applicable to consent decrees as to other judgments.

■ Like many another decree, this one reserved to the court the power of enforcement. But general language about continuing jurisdiction must be limited to enforcement of the decree when the parties are at loggerheads about some concrete subject, lest it condone a violation of Article III. When drafting the decree, the parties must have shared this assumption. Paragraph 55 establishes a dispute-resolution procedure for "disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record", a category that includes this dispute about the contents of the EPA's memorandum of decision. Subparagraph 55(a) entitles Accra Pac to complain to the Director of the EPA's Waste Management Division, a step it took in this dispute (with partial suc-

cess); subparagraph 55(b) continues: "Judicial review of any dispute governed by this Paragraph shall be governed by applicable provisions of law."

There you have it. The district court did not approve a settlement that dispenses with the requirements of Article III and the APA; the judgment instead insists that these requirements be respected. Neither side has pointed to any "applicable provision[ ] of law" authorizing judicial resolution of a dispute about language in an administrative order that is substantively favorable to the party seeking review. The district judge therefore should not have entertained Accra Pac's request for review. Its decision is vacated, and the case is remanded with instructions to dismiss Accra Pac's application for want of jurisdiction.