*942 ROGERS, Circuit Judge,
dissenting.
Because B-Line lacked Article III standing to appeal the bankruptcy court judgment, the Bankruptcy Appellate Panel properly determined that it lacked jurisdiction over B-Line’s appeal. The requirements for Article III standing apply to the Bankruptcy Appellate Panel (BAP), even though the BAP is not an Article III court, because the power of the BAP is statutorily no greater than the power of a federal district court. See 28 U.S.C. § 158(b). I would therefore affirm the BAP’s dismissal of B-Line’s appeal.
The operative paragraph of the bankruptcy court’s opinion stated:
This Court finds that B-Line did not fulfill its Rule 9011 obligations in filing the B-Line [proof of claim] without having possession of the underlying transactional documents or any reliable proxy for such documents. As a prospective matter, B-Line and other purchasers in the claims trading industry should understand that this Court views the filing, without review of originating documents, of a proof of claim by an assignee/pur-chaser to fall short of reasonable inquiry under Rule 9011 when the obligation has not been scheduled by the debtors and the purchase of the claim was not accompanied by rehable representations of claim validity. Because of the time and energy that B-Line’s senior management devoted in response to this Court’s show cause order, however, the Court does not view any further sanctions to be necessary in this case.
In re Wingerter, 376 B.R. 221, 238 (Bankr.N.D.Ohio 2007). The bankruptcy court’s only holding is the refusal to impose sanctions upon B-Line.[1] The judgment of the bankruptcy court was thus in favor of B-Line, and appellate courts “review[ ] judgments, not statements in opinions.” California v. Rooney, 483 U.S. 307, 311, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987) (quoting Black v. Cutter Labs., 351 U.S. 292, 297, 76 S.Ct. 824, 100 L.Ed. 1188 (1956)). Because the judgment was in B-Line’s favor, B-Line does not have the injury that is a prerequisite to standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). B-Line’s only objection is to the statement, expressed as a “finding,” that B-Line violated Rule 9011. But in the absence of a judgment sanctioning B-Line, this is merely a dictum. The judgment of the case — no sanctions — would be the same if the court had found that B-Line had not violated Rule 9011. “ ‘There is no known basis for appealing a dictum,’ ” Abbs v. Sullivan, 963 F.2d 918, 924 (7th Cir.1992) (Posner, J.) (quoting Oxford Shipping Co. v. N.H. Trading Corp., 697 F.2d 1, 7 (1st Cir.1982)), and thus no basis for appeal here.
This rule has sound foundations. Dicta do not cause parties constitutional injury— even if the dicta are unfavorable — because “[d]icta have no preclusive effect; even holdings do not; only judgments do.” Id. at 924. The statement in the bankruptcy court opinion that B-Line violated Rule 9011 had no effect in the present case because no sanctions were imposed. The same statement has no legal effect on other cases involving B-Line because, as a dictum, it is not binding on B-Line and is neither preclusive nor even precedential *943 authority for other courts. The statement might create some uncertainty for B-Line as to whether a future court might impose sanctions in some future case. Still, “[a]d-verse dicta are not appealable rulings. They can cause harm, but not the sort of harm that the courts, in an effort to limit litigation, deem to create a genuine controversy within the meaning of Article III of the Constitution.” Chathas v. Local 134 IBEW, 233 F.3d 508, 512 (7th Cir.2000) (Posner, J.) (citations omitted). Surely B-Line preferred for the BAP to edit the bankruptcy court’s opinion to state that no sanctions were warranted because B-Line did not violate Rule 9011, rather than in spite of the fact that B-Line did violate the rule. But having received a judgment of no sanctions, B-Line lacks standing to ask for such an appellate revision.
This conclusion is fully consistent with pre-enforcement judicial review of agency regulations. In cases such as Abbott Laboratories v. Gardner, 387 U.S. 136, 154, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court has held that parties affected by agency rulemaking may bring suit to challenge regulations before they are enforced against regulated parties. Where an agency regulation “is directed at [a party] in particular” and where the regulation “requires [that party] to make significant changes in [its] everyday business practices,” the party has standing because, if it “fails to observe [the regulation, the party is] quite clearly exposed to the imposition of strong sanctions.” Id. Agency regulations are capable of requiring action by parties because such regulations “have the status of law and violations of them carry heavy criminal and civil sanctions.” Id. at 152, 87 S.Ct. 1507. Bankruptcy courts, by contrast, do not have the type of rulemaking power that would allow them to issue binding prospective regulations. See 28 U.S.C. §§ 151, 157. Unlike an agency regulation, the bankruptcy court’s statement in the present case regarding the rule it plans to apply “as a prospective matter” does not of its own force legally require any action by B-Line because the statement does not have the status of law. Only the bankruptcy court’s judgment has that kind of status. Because the bankruptcy court’s only legally binding action in this case — its decision not to impose sanctions — was not adverse to B-Line, B-Line lacks the standing that it might have had if the bankruptcy court had possessed and exercised prospective rulemaking power.
It is true that the Supreme Court has recognized one exception to the rule that appellate courts review judgments, not opinions, but that exception is not applicable in this case. In Electrical Fittings Corp. v. Thomas & Betts Co., 307 U.S. 241, 241-42, 59 S.Ct. 860, 83 L.Ed. 1263 (1939), a district court found that a patent was valid but that the plaintiff had failed to prove infringement. The defendant appealed, arguing that the district court had erred in finding that the patent was valid. Id. at 242, 59 S.Ct. 860. The Supreme Court, while noting that the adjudication of the patent’s validity “was immaterial to the disposition of the cause,” held that there was appellate jurisdiction “not for the purpose of passing on the merits, but to direct the reformation of the decree.” Id. This court, in R.T. Vanderbilt Co. v. Occupational Safety and Health Review Commission, 728 F.2d 815, 817 (6th Cir.1984), clarified that the holding from Electrical Fittings rested on the Supreme Court’s perception that “a finding of patent validity ... might significantly affect the behavior of third parties concerned about the patent’s worth.” In R.T. Vanderbilt, we relied on Electrical Fittings to reject an argument that a talc manufacturer lacked constitutional standing to appeal a finding by the Occupational Safety and *944 Health Review Commission that its talc product contained asbestos fibers, even though the Review Commission’s disposition had been that one of the talc manufacturer’s customers was not liable because it did not have reason to know about the asbestos. Id. at 816-17.[2] In the present ease, by contrast, there is no evidence that B-Line’s reputation or relationships with third parties would be damaged. Further, as Judge Ryan noted while writing for a majority of the panel in ASARCO, Inc. v. Secretary of Labor, 206 F.3d 720 (6th Cir.2000), an appellant “cannot invoke the Electrical Fittings exception to achieve ... a review ... on the merits,” as Electrical Fittings “permits only the more limited remedy of reforming a judgment by deleting the allegedly erroneous portions.” Id. at 725 (Ryan, J., concurring) (emphasis in original). Like the appellant in AS AR-CO, B-Line seeks in the present case a reversal of the bankruptcy court on the merits, and the majority in this case orders such relief. The Electrical Fittings exception flatly does not support such relief.
Some of our sister circuits have recognized an additional exception to the rule that appellate courts review judgments, not statements in opinions. This exception applies in cases in which an attorney’s reputation is damaged by trial court findings that the attorney engaged in sanction-able conduct. Even if this court were to recognize this exception, it would not apply to the present case because B-Line asserts no reputational interest in this appeal. The Sixth Circuit has not yet addressed the extent to which court opinions stating that an attorney has engaged in improper behavior can be appealed. See United States v. Barnett (In re Harris), 51 Fed.Appx. 952, 956 (6th Cir.2002) (unpublished). Among the circuits that have addressed the issue, not every circuit allows attorneys to appeal statements that they committed sanctionable conduct in the absence of a monetary fine. The Seventh Circuit has “recognized that an attorney can bring an appeal on her own behalf when challenging a district court decision imposing monetary sanctions on the attorney, but this rule does not allow an appeal of otherwise critical comments by the district court when no monetary sanctions have been imposed.” Seymour v. Hug, 485 F.3d 926, 929 (7th Cir.2007). Among the circuits that do allow appeals of statements critical of attorneys in the absence of a fine, at least one allows an appeal only where the statement is “expressly identified as a reprimand.” See Williams v. United States (In re Williams), 156 F.3d 86, 92 (1st Cir.1998). Under either of these two rules, B-Line would clearly lack standing, as the bankruptcy court did not impose any monetary sanctions and did not expressly identify its finding as a reprimand.
The remaining circuits that have addressed the issue allow appeals of findings that attorneys have engaged in sanctiona-ble conduct because such findings injure the reputation of the attorneys. See, e.g., Butler v. Biocore Med. Techs., Inc., 348 F.3d 1163, 1167 (10th Cir.2003). In Butler, for example, an attorney appealed “portions of a district court order that found him to have committed ‘ethical violations,’ ” even though “this order neither expressly identified itself as a reprimand nor imposed any sanction, monetary or otherwise.” Id. (The order was, however, mailed to every court in which the attorney had been admitted to practice. Id.) The court held that the attorney had standing because “damage to an attorney’s *945 professional reputation is a cognizable and legally sufficient injury.” Id. at 1168. This rationale also does not apply to B-Line, which asserted no reputational interest in the appeal to the BAP.
B-Line’s lack of reputational interest also renders Sterling Consulting Corp. v. IRS (In re Indian Motocycle Co., Inc.), 452 F.3d 25 (1st Cir.2006), not applicable to the present appeal. Sterling did not expand the exception allowing appeals of findings that parties had engaged in sane-tionable conduct; rather, Sterling held that a sanctioned party had standing in a case where two additional criteria were satisfied. First, the Sterling court applied the First Circuit rule that court statements that a party’s conduct is sanctiona-ble are appealable only if the statements “are expressly identified as a reprimand.” Id. at 29 (internal quotation marks omitted) (citation omitted). Second, the court held that even where a party’s reputation is damaged, and even where the trial court expressly identified its statements as a reprimand, standing is without question only where the challenged sanction order also “continues to have a potential real-world impact upon the sanctioned party.” See id. at 30. If this court were to adopt and apply Sterling, then B-Line would lack standing both because B-Line asserted no reputational interest in its BAP appeal and because the order in this case was not expressly identified as a reprimand.
Finally, even if this court chose not to apply the rule that appellate courts “review[ ] judgments, not statements in opinions,” Rooney, 483 U.S. at 311, 107 S.Ct. 2852, B-Line still cannot show that it has suffered an injury in fact sufficient to grant it standing under Article III. See Lujan, 504 U.S. at 560, 112 S.Ct. 2130. The existence of the bankruptcy court order has two plausible negative effects on B-Line, neither of which rises to the level of an injury in fact.
First, if B-Line is correct that its actions were not improper, then it is arguably injured because it may have to litigate this issue again in a future case. This court, however, has previously held that the possible cost of litigating an issue a second time is not sufficient to grant a party standing. In ASARCO, the Mine Safety and Health Administration (MSHA) cited ASARCO for violating mine dust standards. 206 F.3d at 721. An administrative law judge (ALJ) vacated the citation because the MHSA laboratory’s procedures were inadequate, but the ALJ separately determined, over ASARCO’s objections, that it was acceptable for MSHA to rely on dust samples collected from a single mine shaft when issuing citations. Id. ASARCO sought to appeal this determination, first to the Federal Mine Safety and Health Review Commission and then to this court. Id. Noting that “[ajppellate courts review judgments, not statements in an opinion,” we held that ASARCO lacked standing because “[t]he only damage to ASARCO is, perhaps, the cost it may incur in repeating the litigation of the single-sampling issue in the future, if it is cited for a violation, if the citation rests on a single-shift sample, and if the citation is upheld by an ALJ.” Id. at 722, 723-24 (emphasis omitted). Similarly, if B-Line is correct that its conduct is not sanctionable, then the only damage to B-Line is, perhaps, the cost B-Line may incur in re-litigating the sanctions issue if a future court sanctions B-Line for violating Rule 9011. As in ASARCO, “[t]his is a highly speculative injury, too much so to count as the ‘Article III minima of injury in fact’ required for standing.” Id. at 724 (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)).
Second, B-Line is arguably injured because the uncertainty created by the bankruptcy court opinion may deter B-Line *946 from engaging in its regular business practices. But every uncertainty in the law can injure parties in this manner. A rule recognizing such uncertainty as an injury for the purposes of Article III would destroy the rule against advisory opinions. The fact that the injury here is caused by an unfavorable dictum does not alter this result. A party could not sue in federal court on the theory that dicta in a previous Supreme Court case — even a case involving that party — are deterring the party from engaging in a given business practice and ask this court to clarify the state of the law. Uncertainty, like unfavorable dicta and the possibility of future re-litigation, is an insufficient basis for Article III standing. Having no other injury, B-Line lacked standing to appeal to the BAP, and the BAP properly dismissed the appeal.

. The reference to "further” sanction apparently recognizes that the effort of responding to the show cause order itself created administrative costs for B-Line. The costs of complying with the show cause order, however, are not sufficient for appellate standing. As the BAP noted, any appeal of these costs is moot because an appellate court “cannot undo the show cause hearings now.” In re Wingerter, 394 B.R. 859, 869 (6th Cir. BAP 2008).

. This reasoning itself was not necessary to our decision in R.T. Vanderbilt, as we ultimately held that the talc manufacturer lacked prudential standing. 728 F.2d at 818.