In the

# United States Court of Appeals
## For the Seventh Circuit

No. 09-3375

BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS,

*Plaintiff-Appellee,*

*v.*

ORGANON TEKNIKA CORPORATION LLC,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 4251—**Ronald A. Guzmán**, *Judge.*

ARGUED APRIL 1, 2010—DECIDED JULY 27, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and HAMILTON, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Organon Teknika, a subsidiary of the pharmaceutical manufacturer Merck & Co., licenses from the University of Illinois some intellectual-property rights needed to make Tice® BCG, a drug for cancer. The royalty that the University receives depends on what Organon Teknika collects from its customers.

Because the license allows Organon Teknika to sell to affiliated firms, the University was concerned that the transfer prices would be too low and depress its royalty revenue. The license permits the University to reopen the royalty rate if it believes that Organon Teknika's intra-corporate-family prices are lower than the price it charges (or would charge) after arms'-length negotiations with unrelated buyers. The contract provides that an arbitrator will look at comparable pharmaceutical transactions to determine whether Organon Teknika is charging arms'-length prices.

In 2006 the University exercised its option to arbitrate the pricing question. The parties selected as their arbitrator William Albrecht, III, a consultant with CONSOR Intellectual Asset Management. Albrecht received evidence about 39 supposedly comparable selling arrangements. The University denied that any of the 39 was the sort of comparable arms'-length deal that the license contemplated. Albrecht eventually concluded that four particular transactions serve as benchmarks, that they had been negotiated at arms' length, and that they establish that the University is continuing to receive the return for which it negotiated. Albrecht entered an award that closed the proceeding without changing the royalty rate. The report was accompanied by a cover letter that described the award as "final"; CONSOR sent a "final" bill for its services. (The award itself was withheld until the bill had been paid.)

The University was not satisfied with this defeat, but it did not seek judicial review of the award or ask Albrecht

to modify it within the 90 days allowed by 9 U.S.C. §12. Six months after the bills had been paid and the award released to the parties, the University asked Albrecht to reconsider, contending that two of the four transactions he selected as comparable had not actually been negotiated at arms' length. It relied on these two sentences from Albrecht's opinion:

> The foregoing opinions and conclusions contained in this report are based upon the documents, information, and research undertaken as of the date of this report. I reserve the right to revisit my analysis and amend my conclusions, should additional information become available for review.

CONSOR asked its lawyers whether it was legally permitted to reopen the arbitration; counsel said yes, but that it should not do so unless the parties agreed. CONSOR relayed this conditional willingness (adding, as an additional condition, the parties' undertaking to pay for the extra work). The University promptly consented; Organon Teknika did not.

Frustrated by this lack of cooperation, the University filed this suit and asked the district court to compel Organon Teknika to resume the arbitration. It describes its claim for relief as a demand that Organon Teknika honor its commitment to arbitrate any dispute about reopening the royalty rate. Organon Teknika replied that it *did* honor its obligation, that the arbitration was completed, that the University lost, and that the time for further review has expired.

Instead of resolving the parties' dispute, the district court held that there was no dispute to resolve. The district judge wrote a brief order dismissing the suit on the ground that Albrecht had not made a final award, so the matter remained before him and there was nothing for a court to do. Both sides were stunned by this disposition, which neither had suggested.

Surprisingly, Organon Teknika has appealed. Its appeal is surprising because it is the apparent victor. The University commenced this litigation in quest of an order requiring Organon Teknika to resume the arbitration; it emerged empty-handed. Organon Teknika asked the district court to deny the University's request. The judge obliged—and though the judge's reason differs from Organon Teknika's, a victory for the "wrong" reason is still a victory. Yet the University, which lost, did not appeal; and Organon Teknika, which won, did. What's going on?

We asked that question at oral argument. Organon Teknika's lawyer says that it appealed because it disagrees with the district judge's *reason* for entering a judgment in its favor. It believes that the reason may come back to haunt it if, in the future, the University files another suit and insists that Organon Teknika is liable for abandoning the arbitration before its completion. Yet litigants can't appeal from district judges' *opinions*; only their *judgments* are subject to appellate review. *California v. Rooney*, 483 U.S. 307, 311–14 (1987); *In re UAL Corp.*, 468 F.3d 444, 449 (7th Cir. 2006); *United States v. Accra Pac, Inc.*, 173 F.3d 630, 632 (7th Cir. 1999).

We called for post-argument briefs about appellate jurisdiction. It is apparent from these briefs, and from some further thought about the subject, that Organon Teknika's root concern deals with the terms of the judgment rather than the language of the opinion. What Organon Teknika wanted from this litigation (given that it had to endure suit in the first place) was an order dismissing the University's claim with prejudice, so that the controversy about the royalty rate would be over. (At least until the University's next opportunity to exercise the reopener clause.) It didn't get that. The University's suit has been dismissed without resolution, and thus without prejudice to renewal whenever the University deems the time ripe to complain about Organon Teknika's continuing refusal to submit evidence and arguments to arbitrator Albrecht. Perhaps the University thinks that, armed with the district judge's decision, it can persuade Albrecht to revise his award without Organon Teknika's participation. No matter. It is enough to say that Organon Teknika is aggrieved by the terms of the judgment as well as the language of the opinion and therefore is entitled to appellate review. See, e.g., *Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 506 (7th Cir. 2009) (collecting cases).

The merits of the appeal will not long detain us. The district court plainly erred in thinking that Albrecht's award was not final. It resolves the parties' dispute; it was accompanied by a cover letter calling it the final decision; the parties paid their final bills. Nothing further happened for six months—and neither side sug-

gested to the other that something *should* have been happening to get the proceeding wrapped up. It had been wrapped up already. See *Olson v. Wexford Clearing Services Corp.*, 397 F.3d 488, 491 (7th Cir. 2005); *McKinney Restoration Co. v. Bricklayers Union*, 392 F.3d 867, 872 (7th Cir. 2004).

The language to which the district court pointed is the arbitral equivalent of Fed. R. Civ. P. 60(b)(2), which allows a judgment to be reopened to consider "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)". No one thinks that the possibility of reopening a district court's judgment under Rule 60(b)(2) six months after its entry makes the judgment non-final and hence precludes an appeal. See Fed. R. Civ. P. 60(c)(2). Likewise no one should think that the equivalent language in an arbitrator's opinion makes the decision non-final. See *Glass Molders Union v. Excelsior Foundry Co.*, 56 F.3d 844 (7th Cir. 1995). The parties have regaled us with discussions of the "functus officio doctrine" and other technicalities of arbitral law, but none of them matters. The situation is as simple and straightforward as we have described it.

Organon Teknika is entitled to a decision, on the merits, in its favor. Rule 60(c)(1) gives the parties one year to present newly discovered evidence in support of a motion under Rule 60(b)(2). Arbitrator Albrecht did not tell the parties how long they had to use the opportunity he contemplated, but the Federal Arbitration Act does: 90 days. 9 U.S.C. §12. The parties did not supersede

that rule by contract. They bargained for a final and conclusive decision, not for perpetual arbitration. So the University's request came too late. This arbitration is over.

The judgment is vacated, and the case is remanded with instructions to enter a judgment dismissing the suit with prejudice.