**MONTGOMERY WARD & CO., INCORPORATED, Plaintiff,**

v.

**WAREHOUSE, MAIL ORDER, OFFICE, TECHNICAL AND PROFESSIONAL EMPLOYEES UNION, Affiliated with the International Brotherhood of Teamsters, AFL–CIO, Local 743, Defendant.**

No. 95 C 3351.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 12, 1995.

---

Steven R. Peltin, Victoria Lyne Donati, Altheimer & Gray, Chicago, IL, for plaintiff.

Barry Milton Bennett, Asher, Gittler, Greenfield, Cohen & D'Alba, Chicago, IL, Jeffrey Bensley Gilbert, Johnson, Jones, Snelling & Gilbert, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Montgomery Ward & Co. ("Montgomery Ward") seeks to vacate an arbitration award—or more precisely, a portion of that award—that was issued in its favor against defendant Warehouse, Mail Order, Office, Technical and Professional Employees Union, Affiliated With The International Brotherhood Of Teamsters, AFL–CIO, Local 743 ("Local 743"). Local 743 moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), contending that this Court lacks subject matter jurisdiction because Montgomery Ward's complaint fails to allege a violation of a labor contract as required by 29 U.S.C. § 185. Alternatively, Local 743 moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing that Montgomery Ward's complaint is not ripe for adjudication.

## BACKGROUND

Montgomery Ward is an Illinois corporation engaged in the retail sales and services industry. Compl. ¶ 1. Montgomery Ward maintains its corporate headquarters in Chicago, Illinois, and has numerous places of business throughout Illinois and throughout the country. *Id.* Local 743, a labor organization with offices across the country and throughout Illinois, has been the exclusive bargaining representative for Montgomery Ward's product service technicians in Illinois since at least 1988. *Id.* ¶ 2. There is no dispute that Montgomery Ward is an "employer" as defined by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(2), and Local 743 is a "labor organization" as defined by the LMRA, 29 U.S.C. § 152(5). Montgomery Ward and Local 743 are parties to a Collective Bargaining Agreement ("CBA") that governs the wages, hours and working conditions of employees covered by the agreement. The instant lawsuit arises out of a grievance initially filed by Wilfredo

Valle ("Valle") pursuant to the grievance provisions of the CBA.[1]

Valle is employed by Montgomery Ward as a product service technician involved in the "Doctronics" program—a service that permits customers to bring in small appliances and have them repaired on the spot. In April or May of 1993, in accordance with certain notice provisions of the CBA, Montgomery Ward notified Valle that his hours of work were being changed and that he would be required to work some Saturdays and Sundays. Compl. ¶ 8. At the time of this notification, Valle worked at Montgomery Ward's Addison Street facility. *Id.* Upon receiving this notification, Valle requested to displace or "bump" an employee in Montgomery Ward's Schaumburg facility who had less seniority than Valle so that Valle could obtain the less senior employee's more favorable work schedule. *Id.* ¶ 9. Montgomery Ward refused Valle's request because, under the terms of the CBA, an employee is not entitled to "bump" another employee based on seniority absent a "vacancy" at the facility. *Id.* ¶ 9; Compl.Ex. B § 4.6.[2]

On May 10, 1993, Valle timely filed a grievance with Local 743. *Id.* ¶ 10. Valle's grievance noted that his schedule had been changed and that he wanted to transfer to the Schaumburg facility. Compl. ¶ 10. In accordance with the CBA, Local 743 presented Valle's grievance to Montgomery Ward management. *Id.* ¶ 11. Montgomery Ward denied the grievance in the first two stages of the grievance procedure. *Id.* ¶ 12. Subsequently, the grievance was submitted to the Joint Grievance Committee pursuant to the third stage of the grievance procedure. *Id.* The Joint Grievance Committee deadlocked on Valle's grievance. *Id.* Accordingly, Local 743 then requested binding arbitration, the fourth and final stage of the grievance procedure. *Id.*

In should be noted, however, that in the summer of 1993, after Montgomery Ward had twice denied Valle's grievance but before the Joint Grievance Committee heard the grievance and before arbitration, Montgomery Ward created a new position in the Schaumburg facility for which Valle submitted a bid. *Id.* ¶ 13. Montgomery Ward awarded the new position to Valle based on his seniority, and transferred him to the Schaumburg facility. *Id.* At the same time that Valle was transferred, all technicians at the Schaumburg facility were given new work schedules. *Id.* ¶ 14. Under Montgomery Ward's informal practice, Valle was allowed to select the work schedule he wanted based on his seniority.[3] *Id.* Montgomery Ward contends that Valle's ability to obtain the more desirable work schedule resulted from Montgomery Ward's informal practice, not the CBA. *Id.*

Despite the fact that Valle obtained the position and schedule he desired, Local 743 proceeded to arbitrate his grievance. *Id.* ¶ 15. An arbitration hearing was held on January 10, 1995, before Arbitrator Bennett Aisenberg. On March 9, 1995, Arbitrator Aisenberg issued a decision noting that, "In spite of the fact that the grievant was awarded the transfer that he had initially requested, he and the Union persisted in the grievance because of the principle involved." Compl.Ex. A, Arbitration Decision at 5.

Arbitrator Aisenberg identified the stipulated issues for arbitration as follows:

1. Did the Company violate the Collective Bargaining Agreement when it changed the hours of Wilfredo Valle and refused to permit him to transfer from one store to another?

2. If so, what is the appropriate remedy?

Compl. ¶ 18; Arbitration Decision at 6. Despite the fact that the CBA contains no such

---

1. The CBA contains a four-step grievance procedure that culminates with binding arbitration.

2. The CBA provides in pertinent part:

   Where there are varying starting times or varying schedule of days to be worked for regular full-time ... associates who work in the same job classification within a department, such associates may select their starting time or varying schedule of days based on seniority whenever a vacancy occurs.
   Compl.Ex. B § 4.6.

3. We learn from the Arbitration Decision that a less senior technician at the Schaumburg facility ended up being assigned the work schedule that entailed Saturday and Sunday work. *See* Compl., Ex. A, Arbitration Decision at 5.

provision, the Union contended that an agreement was made in 1989 between certain Union representatives and Montgomery Ward's vice-president of labor relations that senior Doctronics technicians could select their schedules even when that involved bumping junior technicians with preferable schedules. *See* Arbitration Decision at 1–2. Thus, Arbitrator Aisenberg determined that the "issue revolves around whether a binding agreement was entered into between the Company and the Union sometime in 1989 wherein the Company agreed to permit a senior product service technician involved in Doctronics to bump a junior product service technician in order to avoid having to work on Sundays." Arbitration Decision at 6.

Arbitrator Aisenberg's analysis focuses on whether the Union had met its burden of proving that such an agreement was made; and, after reviewing all of the evidence before him, he concluded that the Union had failed to meet that burden. In reaching this conclusion, Arbitrator Aisenberg noted that the relevant provisions of the CBA limit the selection of shifts or schedules based on seniority to situations in which a vacancy exists. *See id.* at 6–7 (discussing CBA paragraphs 4.6 and 10.2). Additionally, the Arbitrator observed that although various discussions were apparently conducted between the Union and Montgomery Ward regarding product service technicians and Sunday work, no agreement or understanding relating to senior product technicians bumping junior technicians in situations other than vacancy situations is memorialized in either the CBA or other writings reflecting the parties' agreements. *See id.* at 7, 8. Thus, there was not sufficient evidence to establish the existence of the alleged 1989 agreement and therefore Montgomery Ward did not violate the CBA by changing Valle's hours and refusing to permit him to transfer to the Schaumburg facility and bump a junior technician.

The portion of the Arbitrator's decision that is the subject of the present federal lawsuit is the following paragraph, quoted in its entirety:

The Arbitrator has reflected on the fact that the grievant was eventually permitted to transfer to the Schaumburg location and that the junior employee, Mazzini, was given the less preferable shift. However, [Montgomery Ward's representative] explained this by pointing out that the shift that Mazzini had been filling changed, and thus, two vacancies occurred rather than merely one. Thus, Article 4.6 permitted the grievant preference in this situation. Whether two vacancies occurred, or only one, is immaterial for purposes of this decision. The fact is that [Montgomery Ward] had an arguable basis for permitting the grievant to bid for the position. It is apparent that the Company considers a change in starting time or varying schedule of days in an existing job to constitute a new job, and the Company will be bound in the future to apply Section 4.6 under these circumstances, because a vacancy exists. The fact that the Company permitted this in no way counteracts its position that where a vacancy does not exist, Article 4.6 has no application.

Arbitration Decision at 8.

In the complaint in this case, Montgomery Ward asserts that it "has never considered a change in an employee's schedule to constitute a new job or otherwise create a 'vacancy' under the terms of the Collective Bargaining Agreement." Compl. ¶ 21. Montgomery Ward contends that, in considering Valle's subsequent and unrelated transfer, the Arbitrator injected a new interpretation to the meaning and application of the term "vacancy." *Id.* ¶ 22. Montgomery Ward further contends that Arbitrator Aisenberg's interpretation did not apply to the facts and issues presented in Valle's grievance and that the parties never requested nor had an opportunity to argue or brief the meaning of the term "vacancy." *Id.* Insofar as the Arbitrator addressed facts and issues not submitted to arbitration by the parties, Montgomery Ward alleges that he exceeded his authority and made rulings that do not draw their essence from the CBA. *Id.* ¶ 23. Finally, Montgomery Ward expresses its concern that "Local 743 may attempt to use Arbitrator Aisenberg's comment [quoted above] to bind Montgomery Ward in later grievances." *Id.* ¶ 22. Expressly invoking section 10(a)(4) of the Federal Arbitration

Act, 9 U.S.C. § 10(a)(4), Montgomery Ward requests this Court to "vacate Arbitrator Aisenberg's new interpretation of the term 'vacancy' set forth at page 8 of the award." Compl. at 7.

Local 743 moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6), asserting that Montgomery Ward fails to allege a contract violation actionable under § 301 of the LMRA and that Montgomery Ward fails to state a justiciable case or controversy as required by Article III, § 2 of the United States Constitution.

## ANALYSIS

*Standards*

▬▬ Rule 12(b)(1) requires that an action be dismissed if the court lacks jurisdiction over the subject matter of the suit. Fed.R.Civ.P. 12(b)(1). When a defendant moves for dismissal pursuant to 12(b)(1), the plaintiff bears the heavy burden of demonstrating that the court has subject matter jurisdiction. *Rogers v. Sugar Tree Prod.*, 7 F.3d 577, 581 (7th Cir.1993); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979). In ruling on such a motion, this Court "is not bound to accept as true the allegations of the complaint which tend to establish jurisdiction where a party properly raises a factual question concerning the jurisdiction of the . . . court to proceed with the action." *Hausermann*, 602 F.2d at 783. Instead, this Court may consider any evidence outside of the initial pleadings submitted on the issue. *Rueth v. United States Envtl. Protection Agency*, 13 F.3d 227, 229 (7th Cir.1993) ("The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."). *See also NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 293 (7th Cir.1992); *Bowyer v. United States Dep't of Air Force*, 875 F.2d 632, 635 (7th Cir.1989); *Hausermann*, 602 F.2d at 783. If the evidence submitted creates a factual controversy, the district court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists. *Bowyer*, 875 F.2d at 635–36.

▬▬ Rule 12(b)(6) authorizes the Court to dismiss a case "for failure to state a claim upon which relief can be granted." Fed. R.Civ.P. 12(b)(6). A 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Triad Assocs., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir.1989), *cert. denied*, 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). The only question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). All well-pleaded facts are taken as true, and all inferences are drawn in favor of the plaintiff. *Id.* A Rule 12(b)(6) motion will only be granted if " 'it is beyond a doubt that the non-movant can plead no facts that would support his claim for relief.' " *Palda v. General Dynamics Corp.*, 47 F.3d 872, 874 (7th Cir.1995) (quoting *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 101–102).

▬▬ Ordinarily, a court looks only to the well-pleaded facts contained in the complaint to determine if a plaintiff has stated a claim upon which relief can be granted. *Palda*, 47 F.3d at 874. However, where a complaint is predicated on an underlying written instrument and that instrument is attached to the complaint, the court may also consider that document. *See id.* at 876; *see also* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to any pleading is a part thereof for all purposes.") In this case we may properly consider the arbitration award (Compl.Ex. A), the CBA (Compl.Ex. B), the grievance (Compl.Ex. C), and the letters of correspondence attached as Compl.Ex. D.

*Standard for Judicial Review of Labor Arbitration Awards*

▬▬ As the Supreme Court recognized in the "Steelworker's Trilogy," national policy favors the resolution of labor disputes through arbitration. *See generally United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d

1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Consistent with this policy, the scope of judicial review of labor arbitration awards is extremely limited. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987); *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986); *Judsen Rubber Works, Inc. v. Manufacturing, Prod. & Serv. Workers Union Local No. 24*, 889 F.Supp. 1057, 1060 (N.D.Ill. 1995). This is so, in part, because "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Enterprise Wheel & Car*, 363 U.S. at 596, 80 S.Ct. at 1360. Accordingly, courts are not authorized to reconsider the merits of an arbitration award. *Misco*, 484 U.S. at 36, 108 S.Ct. at 369; *Enterprise Wheel & Car*, 363 U.S. at 596, 80 S.Ct. at 1360.

In *Enterprise Wheel & Car*, the Supreme Court described the proper function of an arbitrator, as well as a reviewing court as follows:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

363 U.S. at 597, 80 S.Ct. at 1361; *see also Randall v. Lodge No. 1076, Int'l Ass'n of Machinists & Aerospace Workers*, 648 F.2d 462, 465 (7th Cir.1981) (noting that "the role of judicial review in the arbitration context is

that the arbitrator's decision should not be upset unless it ... fails to draw its essence from the collective bargaining contract because it exceeds the confines of interpreting and applying the contract."). Thus, it is now well established that an arbitration award will be enforced "so long as it 'draws its essence from the collective bargaining agreement' even if the court thinks the arbitrator misconstrued the contract." *Ethyl Corp.*, 768 F.2d at 184.[4]

In *Hill v. Norfolk & W. Ry.*, the Seventh Circuit sketched the contours of judicial review of labor arbitration awards as follows:

> [T]he question for decision by a federal court asked to set aside an arbitration award ... is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract. If they did, their interpretation is conclusive.... A party can complain if the arbitrators don't interpret the contract—that is, if they disregard the contract and implement their own notions of what is reasonable or fair. A party can complain if the arbitrators' decision is infected by fraud or other corruption, or if it orders an illegal act. But a party will not be heard to complain merely because the arbitrators' interpretation is a misinterpretation. Granted, the grosser the apparent misinterpretation, the likelier it is that the arbitrators weren't interpreting the contract at all. But once the court is satisfied that they were interpreting the contract, judicial review is at an end, provided there is no fraud or corruption and the arbitrator's haven't ordered anyone to do an illegal act.

814 F.2d 1192, 1194–95 (7th Cir.1987).

Consistent with the admonitions of the Supreme Court and the Seventh Circuit, "[i]t is

---

4. In *Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.*, 935 F.2d 1501 (7th Cir. 1991), the Court elaborated on the meaning of the expression "draws its essence from the collective bargaining agreement":

> To be entitled to set aside the arbitrator's action ... the court must find a violation of the agreement to arbitrate. Which means that the role of the court is severely limited—but not negligible. Since the arbitrator's function ...

> is limited to interpreting the contract, the court asked either to set aside or to enforce his award must make sure that he abided by that limit on his authority, for otherwise the award was made in violation of the agreement to arbitrate. This is the meaning of the slogan from [*Enterprise Wheel & Car* ] that the award must "draw its essence" from the contract that the arbitrator was asked to interpret.

935 F.2d at 1505.

only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract ... that the award can be said not to 'draw its essence from the collective bargaining agreement.'" *Ethyl Corp.*, 768 F.2d at 184–85. Any reasonable doubt whether the arbitrator interpreted the contract or relied on some private notion of equity must be resolved in favor of enforcing the award. *Id.* at 185.

*The Present Case*

██ We note at the outset that this case presents a rather unusual factual scenario: namely, the party that prevailed at arbitration asks this Court to vacate what can only be described as unfavorable *dicta* in the arbitration decision. Neither party has directed the Court to a single case in which the party that has prevailed at arbitration has sought to vacate an arbitration award or any portion of the arbitrator's decision. While there can be little doubt that the losing party to a labor arbitration may bring an action in federal district court to vacate the arbitral award, or that the prevailing party may bring an action in federal district court to enforce the award, the instant suit appears to present a question of first impression—whether the prevailing party to a labor arbitration may sue in federal court to vacate unfavorable language in an arbitration decision which is otherwise in its favor.

*Subject Matter Jurisdiction*

Section 301 of the LMRA confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce...." 29 U.S.C. § 185. Local 743 contends that Montgomery Ward's lawsuit must be dismissed because Montgomery Ward does not allege a violation of contract—rather, as the prevailing party to a labor arbitration, Montgomery Ward merely seeks to excise certain language from the Arbitrator's decision.

At the outset, we pause to discuss the bearing, if any of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, which is also invoked in Montgomery Ward's complaint.[5] The short answer, in this case, is that it has virtually no bearing—particularly with respect to the scope of our subject matter jurisdiction. As the Seventh Circuit recently noted, the FAA is not formally applicable to the labor arbitration context; rather it is looked to "as a source of principles to guide the formulation of a federal common law of labor arbitration under section 301." *Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL–CIO, CLC, Local 182B v. Excelsior Foundry Co.*, 56 F.3d 844, 848 (7th Cir.1995). Indeed, the Seventh Circuit has expressly noted that "section 301 was enacted long after the Arbitration Act and deals specifically, as the Arbitration Act does not, with labor contracts; it therefore supersedes, within its domain, the standards of the earlier act." *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL–CIO*, 739 F.2d 1159 (7th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985). Here, we are not confronted with the task of forging federal common law in the area of labor arbitration but rather we have the limited task of determining whether we have subject matter jurisdiction over the instant lawsuit. For that purpose, we look to only the grant of jurisdiction provided by § 301. We note specifically that the provision in FAA § 10(a)(4) that "any party" may make an application to vacate an award has no force here.

██ In response to Local 743's contention that Montgomery Ward does not allege a contract violation, Montgomery Ward responds that it need not allege a contract violation beyond the improper arbitration award. We agree with Montgomery Ward's implicit position that the improper award itself constitutes the "contract violation" that can be remedied in Federal Court. A suit brought in federal court to vacate an arbitra-

5. Specifically, Montgomery Ward expressly invokes § 10 of the FAA, which provides in pertinent part:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating

the award upon the application of any party to the arbitration—

. . . . .

(4) Where the arbitrators exceeded their powers....

9 U.S.C. § 10.

tion award under § 301 is a suit for breach of contract. *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers, Dist. No. 8,* 802 F.2d 247, 251 (7th Cir.1986); *Ethyl Corp. v. United Steelworkers of America, AFL–CIO–CLC,* 768 F.2d 180, 184 (7th Cir.1985). Such a suit is an action "to enforce the labor contract that contained the clause authorizing the arbitration of disputes arising out of the contract. For in arguing against the award, the plaintiff normally will be pointing to implicit or explicit limits that the contract places on the arbitrator's authority—principally that he was to interpret the contract and not go off on a frolic of his own—and arguing that the arbitrator exceeded those limits." *Chicago Typographical Union, No. 16 v. Chicago Sun–Times, Inc.,* 935 F.2d 1501, 1503 (7th Cir.1991). Section 301 embraces all suits arising out of arbitration awards "whether it is a suit to enforce or to set aside the award, and if the latter whether the suit is based on contractual or noncontractual grounds." *Id.* Notwithstanding the foregoing, we find that Montgomery Ward has not alleged an improper award in this case.

As we shall emphasize several times in this Opinion, Montgomery Ward prevailed in the arbitration and it does not challenge the substance of the award that was rendered in its favor. Instead, it challenges certain language in the Arbitrator's decision that is ancillary to the award itself. Arbitrator Aisenberg articulated the stipulated issues for arbitration as:

1. Did the Company violate the Collective Bargaining Agreement when it changed the hours of Wilfredo Valle and refused to permit him to transfer from one store to another?

2. If so, what is the appropriate remedy?

Compl. ¶ 18; Arbitration Decision at 6. It is plain that Arbitrator Aisenberg recognized that the meaning of the term "vacancy" was not submitted to him. It is also quite plain that an arbitrator lacks authority to decide

issues not presented to him or her and that an arbitral award can bind the parties only on issues submitted for arbitration. *See Butterkrust Bakeries v. Bakery, Confectionery and Tobacco Workers Int'l Union, AFL–CIO, Local No. 361,* 726 F.2d 698, 700 (11th Cir.1984) ("[T]he law is well-established that an arbitrator 'can bind the parties only on issues that they have agreed to submit to him.'" quoting *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1,* 611 F.2d 580, 583 (5th Cir.1980)); *Courier–Citizen Co. v. Boston Electrotypers Union No. 11, Int'l Printing & Graphic Communications Union of North Am.,* 702 F.2d 273, 281 (1st Cir.1983) (stating that an arbitrator lacks authority to decide issues not submitted and courts will not enforce awards exceeding the arbitrator's authority); *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 302 (3d Cir.1982) (stating that an arbitrator's authority is limited to the issues submitted).

Although Arbitrator Aisenberg stated in his decision that "[i]t is apparent that the Company considers a change in starting time or varying schedule of days in an existing job to constitute a new job, and the Company will be bound in the future to apply Section 4.6 under these circumstances, because a vacancy exists," Arbitration Decision at 8, we do not regard this language as constituting any part of the award *per se.* It is, if you will, the arbitral equivalent of dictum. *Cf. Ethyl Corp.,* 768 F.2d at 188 ("The award itself, as distinct from the arbitrator's opinion, a separate document, is unambiguous when tacked together with the grievance. The award says simply that the grievance is sustained...."). In our case, the award simply says "the grievance is denied." As the Seventh Circuit noted in *Chicago Sun–Times,* "Arbitrators are not required to write opinions, any more than juries are." 935 F.2d at 1506. Obviously, arbitral decisions are essential to meaningful review and, as the court noted in *Chicago Sun–Times,* "writing disciplines thought," [6] *id.;* neverthe-

---

**6.** The full passage reads:

It would be a serious practical mistake ... to subject the reasoning in arbitrators' opinions

to beady-eyed scrutiny ... might discourage [arbitrators] from writing opinions at all. Arbitrators are not required to write opinions,

less, the language of the decision is analytically distinct from the arbitral award and we find no authority—either in the statute or the caselaw—for permitting a prevailing party to sue in federal court to vacate language in the decision that does not impact upon on the actual arbitral award.

Our decision is buttressed by a comparison to appeals. Although "a suit to set aside an arbitrator's award is not an appeal, it is like an appeal...." *Dreis & Krump*, 802 F.2d at 249. Thus, an examination of the circumstances under which a prevailing party in civil litigation may appeal provides some insight into the issue presently before the Court.

■ The Seventh Circuit has noted that "a winner cannot appeal a judgment merely because there are passages that displease him—that may indeed come back to haunt him in a future case." *Abbs v. Sullivan*, 963 F.2d 918, 924 (7th Cir.1992) (citing *California v. Rooney*, 483 U.S. 307, 107 S.Ct. 2852, 97 L.Ed.2d 258 (1987) (per curiam)); *Mueller v. Reich*, 54 F.3d 438, 441 (7th Cir.) ("A defendant cannot appeal the dismissal of the suit against him on the ground that, in dismissing the suit, the district court said some-

thing that may hurt the defendant in a future case."), *petition for cert. filed*, 64 U.S.L.W. 3297 (Oct. 10, 1995); *Warner/Elektra/Atlantic Corp. v. County of DuPage*, 991 F.2d 1280, 1282 (7th Cir.1993) ("If an appellant is complaining not about a judgment but about a finding ...—on the bottom line it prevailed—the appeal does not present a real case or controversy. So it must be dismissed for want of jurisdiction, and the finding will thus have no collateral estoppel effect."). As we have observed above, the passages Montgomery Ward seeks to vacate constitute the arbitral equivalent of dictum—they are not themselves the award. Just as " '[t]here is no known basis for an appeal from a dictum[,]' " *Abbs*, 963 F.2d at 924 (quoting *Oxford Shipping Co. v. New Hampshire Trading Corp.*, 697 F.2d 1, 7 (1st Cir.1982)), we have found no known basis to vacate dicta within an arbitrator's opinion.[7]

For all of the above reasons, we conclude that we are without subject matter jurisdiction to entertain Montgomery Ward's lawsuit.

*Justiciability*

■ Having determined that we are without subject matter jurisdiction, are inquiry

---

any more than juries are. It is a good thing when they do, because writing disciplines thought. We should not create disincentives to their doing so. The more basic point, however, is that since arbitrators' interpretations must be accepted even when erroneous, it cannot be correct that arbitrators are required to write good opinions.
*Chicago Sun–Times*, 935 F.2d at 1506. Here too, we are reluctant to subject the arbitral opinion to "beady-eyed scrutiny" particularly with respect to portions of the opinion that are ancillary to the award itself. Allowing a prevailing party to sue in federal court to set aside unfavorable language in an arbitral opinion would not only discourage arbitral opinion writing but also would unnecessarily drag out the arbitral process—which was intended, in the first place, to reduce the delay and expense associated with litigation.

**7.** We recognize that in certain instances a prevailing party may appeal. *See LaBuhn v. Bulkmatic Transp. Co.*, 865 F.2d 119, 121 (7th Cir. 1988) ("For a prevailing defendant to appeal is unusual but not impermissible."). "In an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the require-

ments of Art[icle] III." *Deposit Guaranty National Bank, Jackson, Mississippi v. Roper*, 445 U.S. 326, 333–34, 100 S.Ct. 1166, 1171–72, 63 L.Ed.2d 427 (1980). For example, a prevailing party can appeal from a refusal to certify their suit as a class action even though the party won on the merits. *Id.* We find that Montgomery Ward retains no such stake in this case. There is also authority for the proposition that a prevailing party may appeal any adverse finding that might form the basis for a plea of collateral estoppel in a subsequent suit. *See, e.g., Schwartzmiller v. Gardner*, 752 F.2d 1341; 1345 (9th Cir.1984); *see also Warner/Elektra/Atlantic Corp. v. County of DuPage*, 991 F.2d 1280, 1282 (7th Cir.1993). To that end, we duly note that Montgomery Ward's express reason for seeking to vacate the subject portion of the arbitral decision is its fear that it might be bound by it in a future arbitration. However, we do not find that to be a realistic possibility. The issue of whether a change in schedule was neither submitted or argued in the arbitration, and Arbitrator Aisenberg's comments on this score were not necessary to his award. Hence, it is exceedingly improbable that his remarks would be given preclusive effect and we decline to recognize the remote possibility that Arbitrator Aisenberg's comments might be given preclusive effect as the basis for jurisdiction in this case.

could, and perhaps should, be at an end; however, we believe that prudence and judicial economy militate in favor of addressing Local 743's alternative argument. The Union contends that Montgomery Ward does not present a case or controversy that is ripe for adjudication. We agree. The impetus for Montgomery Ward's filing of the instant lawsuit is revealed in paragraph 22 of the complaint:

> Arbitrator Aisenberg ... injected a new interpretation of the meaning and application of the term "vacancy" ..., which the parties had neither requested nor had an opportunity to argue or brief, and which did not apply to the facts and issues presented in Valle's grievance. Local 743 may attempt to use Arbitrator Aisenberg's comment quoted ... above ... to bind Montgomery Ward in later grievances.

Compl. ¶ 22. It is apparent from this passage alone that Montgomery Ward is not presenting this Court with a live controversy involving a dispute over the meaning of the contractual term "vacancy." Instead, Montgomery Ward is improperly asking this Court to render an advisory opinion by seeking to strike the Arbitrator's discussion of the meaning of this term from the Arbitration decision in order to avoid some perceived threat relating to a presently nonexistent "later grievance[ ]."

The Supreme Court recently reiterated that " '[t]he exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy,' and 'a federal court [lacks] the power to render advisory opinions.' " *U.S. Nat'l Bank of Ore. v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 446, 113 S.Ct. 2173, 2178, 124 L.Ed.2d 402 (1993) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975)).

> A 'controversy' in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real

and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937) (citations omitted). In order to present a "case" or "controversy", "[a] declaration of rights as they stand must be sought, not on rights which may arise in the future, ... and there must be an actual controversy over an issue not a desire for an abstract declaration of the law." *In re Summers,* 325 U.S. 561, 567, 65 S.Ct. 1307, 1311, 89 L.Ed. 1795 (1945) (citations omitted).

In the instant suit, there is no "definite and concrete" controversy between parties having adverse legal interests. Taking Montgomery Ward's allegations as true, the underlying dispute between the Union (on Valle's behalf) and Montgomery Ward did not involve or concern the meaning of the term vacancy. Moreover, the arbitral award itself—in distinction to the Arbitrator's decision—merely finds that there was no agreement between the Union and Company that senior product technicians could bump junior product technicians and hence denies the Union's grievance. The *award* does not purport to impose any duties or obligations on either party relating to the Arbitrator's comments on the meaning of the term vacancy; consequently, at the present time, neither party to this lawsuit has taken any action inconsistent with the arbitral award giving rise to a concrete dispute.

Nor do we find that Montgomery Ward's representation that it will not abide by this portion of the award creates a definite and concrete controversy that is ripe for federal adjudication. At present, Montgomery Ward's "refusal" is one in principle only. The fact remains that there has been no occasion for Montgomery Ward to take a position on the "vacancy" issue, nor for that matter has the Union taken a position (and it is not at all clear that the Union would necessarily endorse Arbitrator Aisenberg's construction of the term vacancy). Therefore, any dispute surrounding the meaning of the term vacancy is, at this point, entirely

hypothetical and conjectural; so too is any dispute as to whether Montgomery Ward is, or would be, bound by Arbitrator Aisenberg's remarks concerning vacancies. In view of all of these remarks, we cannot conclude that there is a definite and concrete controversy presently before this Court.

Montgomery Ward invokes the specter of Illinois' 90–day statute of limitations for suits to vacate an arbitration award and argues that "[e]ven if Montgomery Ward wanted to delay its challenge of the Award to see how or if Local 743 would use the Arbitrator's extracurricular comments, Illinois law does not provide the luxury of waiting." Pl.'s Mem.Opp'n Mot.Dis. at 9–10. In other words, Montgomery Ward asserts that either it be allowed to vacate the award now, or it will be forever bound to abide by Arbitrator Aisenberg's comments. We find this argument unpersuasive because, as we have noted herein, it improperly conflates the *award* with Arbitrator Aisenberg's comments. Montgomery Ward is not seeking to vacate the arbitration *award;* instead, it seeks to strike certain language in the Arbitrator's decision—language that Montgomery Ward itself describes variously as a "gratuitous comment" and a "errant comment." The *award* was in Montgomery Ward's favor; thus, Montgomery Ward need not fret about having to defend against an action to enforce the award.

As to the fear that the Union might seek to enforce Arbitrator Aisenberg's "gratuitous comment", we note that generally procedural matters such as the issue preclusive effect of a prior arbitration award is itself a matter for arbitration. *See Chicago Typographical Union No. 16 v. Chicago Sun–Times, Inc.,* 860 F.2d 1420, 1424 (7th Cir.1988). And, we further note that since the issue of the meaning of the term vacancy was not submitted to Arbitrator Aisenberg, was not briefed or argued by the parties, and was not necessary to Arbitrator Aisenberg's decision, the fear that Arbitrator Aisenberg's comments would be given issue preclusive effect in a subsequent arbitration is rather unfounded notwithstanding the fact that he declared that Montgomery Ward would be bound. As the Seventh Circuit recently stated, "Collateral

estoppel will apply if: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom the estoppel is invoked was fully represented." *Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.,* 58 F.3d 303, 307 (7th Cir.1995) (*see also* cases cited therein). Clearly, elements one, two and three are not met in this case. Nevertheless, if Montgomery Ward's fears ever prove to be well-founded its only recourse is to seek to have this issue resolved within the context of another suit which presents a proper case or controversy.

## CONCLUSION

We conclude that Montgomery Ward does not present a ripe "case" or "controversy" and this Court must dismiss this action for lack of federal jurisdiction. For all of the foregoing reasons, Local 743's motion to dismiss is granted. This action is dismissed with prejudice.