257 F.3d 1071 (9th Cir. 2001)
 ENVIRONMENTAL PROTECTION INFORMATION CENTER, INC. AND SIERRA CLUB, INC., PLAINTIFFS-APPELLEES,
v.
PACIFIC LUMBER COMPANY, SCOTIA PACIFIC HOLDING COMPANY AND SALMON CREEK CORPORATION, DEFENDANTS-APPELLANTS.
 Nos. 99-16042, 99-16915
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 13, 2000--San Francisco, California
Filed July 24, 2001
 
 Brian Gaffney, Oakland, California, Brendan Cummings, and Sharon E. Duggan, Berkeley, California, for the plaintiffs-appellees.
 Jared G. Carter, Frank Shaw Bacik, Carter, Behnke, Oglesby & Bacik, Ukiah, California and Edgar B. Washburn, David M. Ivester, Christopher J. Carr, Washburn, Briscoe & McCarthy, for the defendants-appellants.
 Appeal From the United States District Court for the Northern District of California Marilyn Hall Patel, District Judge, Presiding D.C. No. CV-98-03129-MHP
 Before: J. Clifford Wallace, Raymond C. Fisher, and Johnnie B. Rawlinson, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 The district court granted Pacific Lumber Company's (Pacific Lumber) motion to dismiss as moot the action brought by the Environmental Protection Information Center, Inc. (EPIC) and entered judgment. Pacific Lumber asks that we vacate (1) an order, filed after the case had become moot, outlining the district court's reasons for granting a preliminary injunction and (2) similar statements about the preliminary injunction contained in the opinion holding the case to be moot. EPIC does not dispute that its case against Pacific Lumber is moot; it asserts, however, that Pacific Lumber lacks standing to request vacatur of the district court's ultra vires statements because the final judgment was entirely in Pacific Lumber's favor. The district court had jurisdiction under 28 U.S.C. 1331, 2201, and 2202 and 16 U.S.C.§ 1540(c) and (g). We have jurisdiction to review the district court's final judgment pursuant to 28 U.S.C. § 1291. We have the authority to entertain petitioner's motion to vacate even though there is no longer an Article III case or controversy pursuant to 28 U.S.C. § 2106 and U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 21 (1994). We vacate the judgment and remand with instructions for the district court to vacate its statements on the merits of EPIC's case made after there was no longer an Article III case or controversy.
 
 I.
 
 2
 On September 28, 1996, as part of the resolution of a dispute over the application of the Endangered Species Act (Act) to lands owned by Pacific Lumber, the federal government, the state of California, Pacific Lumber, and its parent company, MAXXAM Inc., entered into an agreement calling for (1) a moratorium on timber operations in 7500 acres of old growth forest in anticipation of the eventual purchase of those acres by federal and state governments, and (2) Pacific Lumber's submission to the United States Fish and Wildlife Service and the National Marine Fisheries Service (together, Services) of an application for an incidental take permit (ITP) covering Pacific Lumber's remaining lands. Pacific Lumber applied for the ITP on July 12, 1998, and on November 16, 1998, the Services initiated "formal consultation " on the application. On February 24, 1999, the Services completed their consultation and issued a final biological opinion, in which the Services concluded that covered species were unlikely to be adversely affected by Pacific Lumber's proposed habitat conservation plan. The ITP was issued on February 26, 1999, and became effective on March 1, 1999.
 
 
 3
 EPIC filed this action on August 12, 1998, alleging that Pacific Lumber, "as applicants for a federal permit, are in violation of section 7(d) of the Act by irreversibly and irretrievably committing resources, effectively foreclosing the formulation or implementation of reasonable and prudent alternatives, through carrying out timber harvest activities pending the completion of the required consultation procedures." The district court issued a temporary restraining order (TRO) on August 14, 1998, over Pacific Lumber's objections that only "formal" consultation triggered the restrictions of Act section 7(d). On September 3, 1998, the district court again rejected Pacific Lumber's contention that Act section 7(d) could only be triggered by "formal" consultation and converted the TRO into a preliminary injunction"to avoid the ten-day problem" with the understanding that the court would conduct hearings to "take testimony from pertinent persons" and would then "revise [the preliminary injunction] if it's determined to be necessary." The district court heard testimony on September 23-24, 1998, and on October 21-22, 1998, regarding the presence or absence of coho salmon in the lands covered by the ITP application.
 
 
 4
 Pacific Lumber filed a motion to dismiss on February 12, 1999, arguing that because by its terms section 7(d) of the Act applies only during "consultation," EPIC's lawsuit would become moot on March 1, 1999, when it was anticipated the biological opinion would issue. The biological opinion was actually issued earlier than expected, on February 24, 1999. The district court was informed of this development, at the latest, by March 5, 1999, when Pacific Lumber filed the biological opinion with the court.
 
 
 5
 On March 15, 1999, the same day the district court held a hearing on Pacific Lumber's motion to dismiss, the district court issued an order (March 15 order) containing its findings of fact and conclusions of law with respect to the preliminary injunction. In this order, the district court reviewed the evidence on the issue of whether coho salmon were present in certain watersheds and found that they had historically been present in certain streams. The district court then ruled against Pacific Lumber on four issues: (1) whether EPIC had standing to sue, (2) whether EPIC provided Pacific Lumber with the requisite notice of an intent to sue as required by the Act, (3) whether Act section 7 consultation requirements apply to ITP applications, and, if so, whether the requisite consultation had been initiated, and (4) whether EPIC had made a sufficient showing that Pacific Lumber's timber harvesting constituted an "irreversible or irretrievable commitment of resources in violation of Act section 7(d)." In an endnote appended to the order, the district court wrote, "The court notes that the Services issued an ITP and biological opinion on March 1, 1999, . . . and presently, several motions for summary judgment and dismiss [sic] are pending before the court regarding the effect of the ITP's issuance."
 
 
 6
 On May 5, 1999, the district court filed an order (May 5 order) granting Pacific Lumber's motion to dismiss and holding that issuance of the biological opinion had mooted the case. However, before reaching the threshold question of mootness, the district court further addressed,"by way of clarification of its order on plaintiffs' motion for preliminary injunction, whether the section 7 consultation requirements apply to [Pacific Lumber's] application for an ITP." The district court also stated that "the March 15 order properly addressed and adjudicated the issues raised by the parties at the September 3, 1998, hearing. As such, the court finds it appropriate to dissolve the preliminary injunction imposed on [Pacific Lumber] but does not vacate the March 15 order." The district court then filed the judgment, which stated that Pacific Lumber's motion to dismiss was granted and that the action brought by EPIC was "dismissed in its entirety."
 
 II.
 
 7
 The parties are in agreement that the district court lost jurisdiction with the issuance of the biological opinion on February 24, 1999. The Supreme Court has emphasized,"For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101-02 (1998). Pacific Lumber argues that this principle requires us to vacate the district court's March 15 order and extraneous statements contained in the May 5 order. EPIC asserts that Pacific Lumber does not have standing to appeal from the district court's ultra vires statements because the final judgment was entirely in Pacific Lumber's favor. We review questions of standing de novo. McBride v. PLM Int'l, Inc., 179 F.3d 737, 748 (9th Cir. 1999).
 
 A.
 
 8
 At the center of this standing controversy are the familiar concepts that courts "review judgments, not statements in opinions," California v. Rooney, 483 U.S. 307, 311 (1987) (internal quotation omitted), and that interlocutory orders entered prior to the judgment merge into the judgment. See, e.g., Amer. Ironworks & Erectors Inc. v. N. Amer. Const. Co., 248 F.3d 892, 897 (9th Cir. 2001); Madison Square Garden Boxing, Inc. v. Shavers, 562 F.2d 141, 144 (2d Cir. 1977) ("With the entry of the final judgment, the life of the preliminary injunction came to an end, and it no longer had a binding effect on any one."). As a result, "[o]rdinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom. A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it." Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333 (1980), see also Elec. Fittings Corp. v. Thomas & Betts Co. , 307 U.S. 241, 242 (1939). This rule "is one of federal appellate practice, however, derived from the statutes granting appellate jurisdiction and the historic practices of the appellate courts; it does not have its source in the jurisdictional limitations of Art. III." Roper, 445 U.S. at 333-34. As a result, three established prudential routes have developed by which a winning party may be deemed "aggrieved" by a favorable judgment, and thus be deemed to have standing on appeal.
 
 
 9
 First, the Supreme Court has held that a party may seek reformation of a favorable decree--but not review of its merits --that contains discussion of issues "immaterial to the disposition of the cause." Elec. Fittings, 307 U.S. at 242. We have, however, strictly interpreted "decree" to mean"judgment." In United States v. Good Samaritan Church, 29 F.3d 487 (9th Cir. 1994), we dismissed an appeal "because the appellants won the case below. They lost on the issue which they want us to review, but the decision on that issue has no effect on them." Id. at 488. We explained,
 
 
 10
 If the alter ego determination from the summary judgment order [the issue lost by appellants] had found its way into the judgment then review might be appropriate to "direct reformation of the decree." But the judgment in favor of the [appellants] dismissed the government's case without prejudice. That is all it did. . . . [A]ll the judgment said was that the government's "complaint is dismissed without prejudice." There was no declaratory judgment langauge . . . used, no injunctive relief, and nothing to establish any rights or liabilities on the basis of the alter ego determination.
 
 
 11
 Id. (internal citation omitted). Here, the judgment states only, "it is ordered and adjudged that the motion for summary judgment and/or motion to dismiss as moot filed by defendants [Pacific Lumber] is granted and this action brought by plaintiffs [EPIC] is dismissed in its entirety. " Thus, as in Good Samaritan, there is nothing for us to reform in the judgment, and we are unable to hold that Pacific Lumber is"aggrieved" by the judgment under the rationale of Electrical Fittings. See also In re DES Litig., 7 F.3d 20, 25 (2d Cir. 1993) (holding Electrical Fittings to be inapplicable because the superfluous "rulings on personal jurisdiction and choice of law do not appear on the face of the judgment").
 
 
 12
 Second, the Supreme Court has recognized that a winning party will be considered aggrieved by a favorable judgment if future economic loss will result to the party on account of adverse collateral rulings. This route to prudential standing is powerful because it allows for review of the merits--if the parties retain a stake in the controversy satisfying Article III --of the adverse collateral order. See Roper , 445 U.S. at 334 & n.6 (reviewing denial of class certification because class action would spread costs of the litigation). It is rare that a winning party will be able to use this method successfully for gaining review of an adverse collateral order because future economic loss does not include the costs of re-litigating the same issue at a later date. See Asarco, Inc. v. Sec. of Labor, 206 F.3d 720, 723-24 (6th Cir. 2000) (holding that winning party failed to meet requirement of future economic loss); Sea-Land Serv., Inc. v. Dep't. of Transp., 137 F.3d 640, 648 (D.C. Cir. 1998) (same); DES Litig., 7 F.3d at 25 n.5 (same). Pacific Lumber has not alleged any cognizable future economic loss arising from the collateral adverse orders. In addition, because there is no longer an Article III case or controversy, the primary benefit of meeting this requirement --review on the merits of the adverse collateral order--is unavailable to Pacific Lumber.
 
 
 13
 Finally, a prevailing party will meet the prudential standing requirement "[i]f the adverse [collateral ] ruling can serve as the basis for collateral estoppel in subsequent litigation." Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 520 (9th Cir. 1999); see also O'Brien v. Vermont, 184 F.3d 140, 142 (2d Cir. 1999); Sea-Land Serv., 137 F.3d at 648-49; HCA Health Serv. of Virginia v. Metro. Life Ins. Co., 957 F.2d 120, 123-24 (4th Cir. 1992); W.W. Windle Co. v. Comm'r of Internal Rev., 550 F.2d 43, 46 (1st Cir. 1977). The March 15 order and extraneous statements in the May 5 order will not have collateral estoppel effects under our case law because "[d]eterminations which are immaterial to the judgment below have no preclusive effect on subsequent litigation." Good Samaritan, 29 F.3d at 489. We agree with the D.C. Circuit that this "argument from collateral estoppel consequences has elements of circularity. As collateral estoppel does not apply to an unappealable determination, simply holding a ruling unappealable eliminates any prospect of preclusion." SeaLand Serv., 137 F.3d at 648 (internal citation omitted). Here, however, the March 15 order and portions of the May 5 order have no collateral estoppel effect, not only because they are immaterial to the judgment, but also because they were entered without jurisdiction.
 
 B.
 
 14
 Although this appeal does not qualify for prudential standing in the most used settings (reformation of judgment, future economic loss or collateral estoppel), our review is not completed. Thus, although we are unable to deem Pacific Lumber "aggrieved" by the judgment under any of the preceding established rationales, we consider next whether the circumstances of this case render Pacific Lumber "aggrieved" for other reasons. See Roper, 445 U.S. at 334 ("In an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits . . . .").
 
 
 15
 Article III of the Constitution prohibits federal courts from taking further action on the merits in moot cases. Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964). The Supreme Court has repeatedly emphasized that "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co., 523 U.S. at 94 (internal quotation omitted). Relying on these principles, the Third Circuit, in New Jersey v. Heldor Indus. Inc., 989 F.2d 702 (3d Cir. 1993), determined that a party who had received a favorable judgment had standing to request vacatur of an opinion entered after the lower court had lost jurisdiction. In that case, a bankruptcy judge had invested considerable energy into resolving a fairly complicated question. Id. at 705. Before the judge rendered his opinion on the matter, however, the parties agreed to a settlement, mooting the question. The bankruptcy judge decided to issue the opinion anyway with a footnote stating that the parties had actually settled the question. Id. at 704. The Third Circuit vacated the opinion because the bankruptcy judge had "opine[d] and rule[d ] upon an objection that was known to him to have been withdrawn prior to the issuance of his opinion and order." Id. at 703.
 
 
 16
 This holding was reached over a dissent which argued that since the appellant had received all that it sought--approval of the settlement--from the bankruptcy judge, it had no prudential standing to appeal. Id. at 710 (Nygaard, J., dissenting). Nevertheless, it is now the position of the Third Circuit. The parties have not cited, nor have we found, another federal case ruling on this precise issue. The question before us is whether we should follow the Third Circuit or create an intercircuit conflict. Our court has provided us with the analysis to be followed: unless there are valid and persuasive reasons to hold otherwise, we should not create an intercircuit conflict. That is, the presumption is not to create an intercircuit conflict. See United States v. Chavez-Vernaza, 844 F.2d 1368, 1374 (9th Cir. 1987). There is no reason to reject this analysis or not to follow the Third Circuit on the legal issue involved.
 
 
 17
 We, like the majority in Heldor, hold that the district court's decision to flout the dictates of Article III and render an opinion in spite of knowing the cause was moot did render Pacific Lumber an "aggrieved party." While it is true that all dicta "have no preclusive effect," Abbs v. Sullivan, 963 F.2d 918, 924 (7th Cir. 1992), dicta entered after a court has lost jurisdiction over a party inflicts a wrong on that party of a different order than that which exists in the usual case of extraneous judicial pronouncement. See Heldor, 989 F.2d at 709 n.10 ("We do not believe it will suffice merely to describe the bankruptcy judge's action . . . as `dictum' and do nothing more. That action declared a major public law . . . unconstitutional in the course of rejecting a non-existent objection."). We therefore remand and order the district court to vacate its March 15 order and reform the May 5 order in accordance with this opinion.
 
 
 18
 JUDGMENT VACATED AND REMANDED WITH INSTRUCTIONS.