**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-2775

———————

UNALACHTIGO BAND OF THE NANTICOKE LENNI
LENAPE NATION; HON. JAMES BRENT THOMAS, SR.,
Tribal Chairman and War Chief Unalachtigo Band of
Nanticoke-Lenni Lenape Nation a/k/a KSCHUPPEHELLEN,

v.

JON S. CORZINE, Governor of the State of New Jersey in
his individual capacity; STATE OF NEW JERSEY,
Defendants-Appellees,

POWHATAN INDIANS OF DELAWARE VALLEY d/b/a
Powhatan Renape Nation; STOCKBRIDGE-MUNSEE
COMMUNITY
                                (Intervenors in D.C.)

STOCKBRIDGE-MUNSEE COMMUNITY,
Appellant

———————

On Appeal from a Final Order of
the United States District Court
for the District of New Jersey
District Court No. 05-cv-05710
District Judge: The Honorable Joseph H. Rodriguez

Argued March 8, 2010

Before: AMBRO, SMITH,
and MICHEL[*], *Circuit Judges*

(Filed: May 25, 2010)

Don B. Miller, Esq. (argued)
Don B. Miller, PC
1305 Cedar Avenue
Boulder, CO 80304

Donald B. Veix, Jr., Esq.
Anthiel Maslow & MacMill, LLP
131 West State Street
Doylestown, PA 18901

Howard Bichler
Stockbridge-Munsee Community

---

[*]  The Honorable Paul R. Michel, Chief Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

N8476 Moh He Con Nuck Rd.
Bowler, WI 54416

Michael Coren, Esq.
Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, PC
Ten Melrose Avenue
Woodcrest Pavilion
Suite 450
Cherry Hill, NJ 08003
    *Counsel for Appellant*

Anne Milgram
Lewis A. Scheindlin
Ellen M. Hale (argued)
Attorney General of New Jersey
R.J. Hughes Justice Complex
P.O. Box 112, 25 Market Street
Trenton, NJ 08625
    *Counsel for Appellee*

Harris N. Feldman, Esq.
Schnader, Harrison, Segal & Lewis LLP
Woodland Falls Corporate Park
220 Lake Drive East
Suite 200
Cherry Hill, NJ 08002
    *Counsel for Intervenor-Appellee Powhatan*
     *Indians of DE Valley*

Michael J. Fasano (argued)
Edward C. Eastman, Jr.

Lomurro, Davison, Eastman and Munoz, P.A.,
Monmouth Executive Center
100 Willow Brook Road, Building 1
Freehold, NJ 07728
     *Counsel for Amicus, New Jersey Land Title*
     *Association*

---

OPINION OF THE COURT

---

MICHEL, <u>Circuit Judge</u>

Plaintiff Unalachtigo Band of Nanticoke-Lenni Lenape Nation ("Unalachtigo") filed a complaint in District Court, based on the Nonintercourse Act, 25 U.S.C. § 187, seeking possession of land in New Jersey that previously constituted the Brotherton Indian reservation. Intervenor-appellant Stockbridge-Munsee Community ("Stockbridge") moved to dismiss Unalachtigo's complaint under Rule 19 of the Federal Rules of Civil Procedure, claiming a non-frivolous interest in the property. In a single order, the District Court dismissed Unalachtigo's complaint <u>sua sponte</u> for lack of standing and also denied Stockbridge's Rule 19 motion to dismiss, finding that Stockbridge did not have a non-frivolous interest in the property because it had failed to demonstrate that it was a successor-in-interest to the Brotherton Indians. Stockbridge appeals to this

4

court, arguing that the District Court opinion should be vacated because that court lacked jurisdiction to rule on Stockbridge's motion once it determined that Unalachtigo's complaint should be dismissed for lack of standing. We agree with Stockbridge and will vacate-in-part the portion of the District Court's order and opinion denying Stockbridge's Rule 19 motion.

I.

During the French and Indian War, the Colonies faced enemies in the form of France and its Delaware Indian allies, some of whom had migrated west from New Jersey decades earlier. Within the Colony of New Jersey, small bands of Delaware Indians remained. Fearing an alliance between those remaining Delaware Indians and those to the west, New Jersey entered into a treaty with those remaining Delawares in 1758. In return for giving up their claims to lands, the Delaware Indians who wished to remain in New Jersey were settled on a reservation called Brotherton, in an area that today is located within Shamong Township. These Indians formed a tribal government known as the Brotherton Indians. After the French and Indian War ended, New Jersey grew less concerned about the welfare of the Brotherton Indians. Government financial assistance was withdrawn, and in 1801 the poverty-stricken tribe asked the State of New Jersey to sell its reservation and help it move to central New York, where the Mohican Indians on the New Stockbridge reservation had invited them to live. The State legislature obliged, and the

5

majority of the Brotherton moved to New York, where State agents ensured that the formal merger agreement between the Stockbridge and Brotherton tribes granted full membership rights to the Brotherton Delaware. The State then sold the reservation and held the proceeds, which the combined tribe later used to purchase land in Wisconsin after it was forced out of New York in the 1820s and 30s.

In 1823, the Brothertons and Stockbridge again executed a formal tribal agreement to ensure they would receive equal right in the newly purchased Wisconsin lands. In 1832, the Stockbridge Brothertons appeared before the New Jersey legislature seeking compensation for off-reservation treaty hunting and fishing rights not included in the 1802 cession. The legislature appropriated $2,000 and the Indians signed a transfer agreement, purportedly relinquishing the last of Brotherton's tribal rights in New Jersey.

According to Stockbridge, New Jersey's purchase of the Brotherton reservation did not comply with federal law. Since 1789, federal law has required Congress to approve the sale of any Indian lands. Because the State failed to get Congressional approval, the 1801 sale violated federal law and failed to extinguish Indian property rights in the tract.

In the 1990s, a tribe of Delaware Indians in Oklahoma sought to pursue this claim. It asked the legal office for the Bureau of Indian Affairs ("BIA"), as its trustee, to develop and

prosecute the claim on its behalf. The federal lawyers, with the help of a BIA historian, investigated the history of the Brotherton reservation and concluded that, while there probably was a meritorious claim to be pursued, this tribe of Delawares from Oklahoma was not the one to do it because it was not the successor-in-interest to the Brotherton Delaware Tribe. Instead, it appeared that the Stockbridge-Munsee Tribe (the intervenor-appellant "Stockbridge") in Wisconsin was the likely successor and, in 2000, the Interior Department's top Indian-affairs lawyer advised Stockbridge of its potential claim. Stockbridge then retained counsel and an expert historian to investigate the claim.

Before Stockbridge acted on its claim, the Unalachtigo, an Indian group in southern New Jersey not recognized by the United States or the State of New Jersey, filed this 2005 action claiming to be the rightful owners of the Brotherton reservation and seeking its possession. Asserting its claim through the Nonintercourse Act ("Act"), the Unalachtigo alleged that New Jersey's sale of the reservation in 1802 violated the Act because the sale of Indian lands is void if it is without Congressional consent.

Stockbridge determined that this suit likely would result in judicial interpretation of the same treaties and statutes that should necessarily form the basis of its own claim if it later decided to pursue it. But Stockbridge did not want to litigate these matters in the context of the Unalachtigo suit. Concerned that its interests could be impaired if the action proceeded in its

7

absence, Stockbridge moved to intervene as a defendant for the sole purpose of seeking dismissal of the Unalachtigo's complaint under Rule 19 for failure to join it as an indispensable party claiming sovereign immunity. Stockbridge claimed that it was the successor-in-interest to the Brotherton Indians. However, it did not claim an interest in the land of the Brotherton reservation or otherwise move to address its interests on the merits.

Before the District Court rendered a decision on Stockbridge's Rule 19 motion, Unalachtigo amended the Complaint to name the State of New Jersey and Governor Jon S. Corzine ("State defendants") and dismissed as to the other, Burlington County defendants. The State defendants filed a motion to dismiss based on Eleventh Amendment immunity as well as other defenses. The State defendants later withdrew their motion to dismiss without prejudice for the District Court to resolve Stockbridge's motion.

On May 20, 2008, the District Court denied Stockbridge's motion under Rule 19 and dismissed Unalachtigo's case for lack of standing sua sponte. Both Unalachtigo and Stockbridge appealed the court's order. Unalachtigo was unable to obtain counsel and its appeal was therefore dismissed.

In its opening brief, Stockbridge did not challenge the District Court's dismissal of Unalachtigo's complaint, but

8

instead requested that this court reverse the District Court's ruling that, because Stockbridge is not Brotherton's successor, it was not an indispensable party pursuant to Rule 19(a). Stockbridge argued that it was the successor-in-interest to the Brotherton. In response, the State of New Jersey argued that the decision should be affirmed because there was no case or controversy as a result of the dismissal of Unalachtigo's amended complaint. On reply, Stockbridge abandons its original argument that the District Court erred in denying its Rule 19 motion. Stockbridge instead argues that the District Court opinion should be vacated because the District Court lacked jurisdiction to rule on the Rule 19 motion once it determined that Unalachtigo's complaint should be dismissed for lack of standing.

II.

Article III extends the Judicial Power of the United States only to "cases" and "controversies." The Supreme Court has held that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971). As the Supreme Court emphasized, "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (internal quotation marks omitted).

9

In New Jersey v. Heldor Indus., Inc., 989 F.2d 702, 705 (3d Cir. 1993), this court vacated an opinion entered by a lower court after it lost jurisdiction. The State of New Jersey initially objected to Heldor's bankruptcy settlement agreement, but later advised the bankruptcy judge that it would withdraw its objection. Id. at 704. Despite being aware of the withdrawal, the bankruptcy judge still issued a memorandum opinion concluding that the State's objection was overruled. See id. at 704-05. After the District Court affirmed the bankruptcy judge's opinion, Heldor appealed to this court, arguing that the bankruptcy judge lacked the jurisdiction to issue its opinion. See id. at 705. This court agreed, reasoning, "[s]ince from the time of the Framers to the present federal courts have been limited in their power to decide only 'cases' or 'controversies' and not render advisory opinions, it is apparent that the bankruptcy judge could not exercise 'the judicial Power of the United States' over a non-existent dispute[.]" Id. at 709. The controversy was moot after the State's withdrawal of its objection and, thus, the bankruptcy judge's memorandum was an improper "advisory" opinion. See id. at 707.

The Ninth Circuit analyzed the issue similarly in Environmental Protection Information Center, Inc. v. Pacific Lumber Co., 257 F.3d 1071 (9th Cir. 2001). In that case, the appellant asked the Ninth Circuit to vacate an order, filed after the case had become moot, outlining the District Court's reasons for granting a preliminary injunction. Id. at 1073. The appellee agreed that the District Court lost jurisdiction, but argued that

the appellant lacked standing to appeal because the final judgment was in the appellant's favor. Id. The Ninth Circuit acknowledged that the appeal "d[id] not qualify for prudential standing in the most used settings (reformation of judgment, future economic loss or collateral estoppel)[.]" Id. at 1076. Nevertheless, the court, like the majority in Heldor, held that the District Court's decision to "flout the dictates of Article III and render an opinion in spite of knowing the cause was moot did render [the appellant] an 'aggrieved party.'" Id. at 1077. The court explained, "[w]hile it is true that all dicta 'have no preclusive effect,' dicta entered after a court has lost jurisdiction over a party inflicts a wrong on that party of a different order than that which exists in the usual case of extraneous judicial pronouncement." Id. (internal citation omitted). The Ninth Circuit therefore vacated the District Court's order and remanded. Id.

In this case, the District Court dismissed Unalachtigo's amended complaint for lack of standing. Because intervention is ancillary to a main cause, once the District Court determined that Unalachtigo's cause of action should be dismissed for lack of standing, there no longer was a live case or controversy. See Fuller v. Volk, 351 F.2d 323, 328 (3d Cir. 1965) (holding that intervention contemplates an existing suit and is ancillary to the main cause of action); see also Littlejohn v. BIC Corp., 851 F.2d 673, 677 n.7 (3d Cir. 1988) ("[I]ntervention is ancillary and subordinate to a main cause and whenever an action is terminated, for whatever reason, there no longer remains an

11

action in which there can be an intervention.") (internal quotation marks omitted). Thus, as in <u>Heldor</u> and <u>Pacific Lumber</u>, the District Court issued an opinion on Stockbridge's Rule 19 motion when it lacked jurisdiction. This "advisory" opinion ignores the dictates of Article III and renders Stockbridge an "aggrieved party" such that it is entitled to appellate relief.

## III.

For the foregoing reasons, we will vacate the portion of the District Court's order and opinion denying Stockbridge's Rule 19 motion.